UNITED STATES of America

v.

Sam SCHWARTZ, Appellant.

No. 13210.

United States Court of Appeals
Third Circuit.

Argued June 9, 1960.

Decided Oct. 6, 1960.

Rehearing Denied Nov. 16, 1960.

Jacob Kossman, Philadelphia, Pa., for appellant.

James Paul Dornberger, Asst. U. S. Atty., Philadelphia, Pa. (Walter E. Alessandroni, U. S. Atty., Philadelphia, Pa., on the brief), Assistant United States Attorney, for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

BIGGS, Chief Judge.

The appellant, Schwartz, was convicted of using the mails to defraud, 18 U.S.C.A. § 1341, solely on the basis of evidence produced by a "mail watch" placed by Hillegas, a postal inspector of the United States Post Office Department, on first class mail addressed to Schwartz. A "mail watch" or "mail cover" consists of the compiling of a record by a letter carrier of information appearing on the face of envelopes of letters addressed to specified persons. In the present case the procedure was successfully used to discover the names of Schwartz's victims which were then furnished to the Department of Justice by postal inspectors for the purpose of instituting criminal proceedings. The sole issue presented for our determination is whether this evidence was properly admissible against the appellant. A motion was made by the appellant to suppress

the evidence thus obtained and was denied. D.C., 176 F.Supp. 613. At trial this motion was renewed, was again denied, and the questioned evidence admitted. The appellant was convicted and the appeal at bar followed.

The appellant contends that the information obtained through the "mail watch" was furnished to the Justice Department in contravention of certain Postal Regulations hereinafter set out and discussed, and that evidence so communicated to the Justice Department is inadmissible in a criminal proceeding. The court below concluded that the communication of the information by the postal authorities was in fact prohibited by the Postal Regulations, but concluded that evidence obtained as a result of a violation of such Regulations was admissible in a federal court. We agree that the evidence was admissible, but for the reason that there was no violation of Postal Regulations.

The Postal Regulations in existence prior to those in effect at the critical dates in the case at bar provided:

"Section 41.4—Giving Information About Mail Matter

"(a) *Restriction.* Postmasters and others in the postal service shall not give to unauthorized persons information concerning mail matter. They shall furnish such information to post-office inspectors and may furnish it also to the sender, the addressee, or the authorized representative of either, when satisfactory identification has been established and the request is limited to information proper for the applicant to receive. Postmasters may give to officers of the law, upon proper identification, to aid in the apprehension of fugitives from justice, information regarding the addresses, return cards, or postmarks on mail matter, but shall not withhold such mail from the addressees or delay its delivery. If the information so given to such officers relates to a violation of the postal laws, the postmaster shall report his action immediately to the inspector in charge of the division in which his office is located.

"(b) *Exception for Official Request.* Upon official request of a representative of another executive department, agency, or independent establishment of the Federal Government and the presentation of proper credentials, postmasters may, when practicable, furnish for official use information regarding the addresses, return cards, or postmarks on mail matter, provided the labor involved in complying with the request does not interfere with postal business, or result in material cost. Such mail shall not be withheld from the addressee nor delayed in delivery. When a postmaster is in doubt as to the advisability of complying with such a request, or material cost is involved, he should write to the First Assistant Postmaster General for instructions, except that in cases involving registered, insured, or collect-on-delivery mail he should submit the question to the Third Assistant Postmaster General, Division of Registered Mail."

In 1954, disclosure was made that the Postal Department had conducted a "mail watch" on the mail of a United States Senator and had turned over information compiled therefrom to the staff of a Senate Committee. A special Senate Subcommittee issued and forwarded to the Attorney General a report strongly disapproving the incident. S. Rep. No. 2510, 83rd Cong., 2d Sess. (1954), reprinted at 101 Cong.Rec. 2564 (1955). The Regulations were then redrafted and are set out in the current Postal Manual, parts 311.6 and 311.7. These parts provide:

"311.6 *Mail Matter.* Furnish information concerning mail or mailing permits to postal inspectors and to the sender, the addressee, or the authorized representative of either on proper identification. Do not give such information to others. * * *"

"311.7 *Concerning Fugitives.* Furnish to officers of the law, on proper identification, information regarding the addresses, return cards, or postmarks on mail to aid in the apprehension of fugitives from justice. Report the action immediately to the post office inspector in

charge if the information furnished relates to a violation of the postal laws."

As to the procedure employed here the Regulations state:

"831.44 *Mail Cover.* Requests by postal inspectors in charge and postal inspectors for information regarding the addresses, return cards, or postmarks on mail, must be treated in strict confidence and complied with carefully and accurately. In obtaining the information, do not delay delivery of the mail."

The following Regulations of the Postal Department have also been cited by the appellant as pertinent:

(1) "Sealed first-class mail while in the custody of the Post Office Department is accorded absolute secrecy. No persons in Postal Service, except those employed for that purpose in dead-mail offices, may break or permit the breaking of the seal of any matter mailed as first-class mail without a legal warrant, even though it may contain criminal or otherwise unmailable matter, or furnish evidence of the commission of a crime." See Postal Manual, Part 113. (2) "The return address of the sender must be shown on the address side of mail to secure its return * * *" Postal Manual, Part 158.3. (3) "Dead Mail. * * * Treatment * * * At Dead Mail Office. Mail is examined and opened when necessary to find the name and address of the sender or addressee." See Postal Manual, Part 158.822a.

■■ That these Regulations do not prohibit the "mail watch" procedure itself is plain. Indeed, part 831.44 contemplates requests by postal inspectors for information garnered in this method and directs compliance with such requests. It is also clear that part 311.6 restricts the class of persons who may be furnished information so obtained. Those persons who may receive it are identified as postal inspectors, the sender, the addressee, or the authorized representative of either. "[O]thers" may not be given such information. That the word "others" is broad enough to include the Department of Justice to which this in-

formation was given does not seem open to question.

The United States contends, however, that the prohibition as to who may furnish information contained in part 311.6 has no application to postal inspectors, and that since, in the present case, the evidence used to convict Schwartz was furnished to the Department of Justice by a postal inspector, it was not obtained in contravention of Postal Regulations. We agree that the prohibition contained in part 311.6 is not addressed to postal inspectors and that therefore the evidence in question was in no sense obtained illegally.

This conclusion would follow even if we were limited in our construction of part 311.6 to a bare examination of its words. Neither sentence contained in this part discloses the persons to whom its admonitions are addressed. But, the first sentence which is undoubtedly addressed to the same persons as is the second sentence, states to whom these addressees may furnish information. One class of persons so eligible consists of postal inspectors. Certainly, if postal inspectors were intended to be designated as among the persons to whom the admonitions of this part were addressed they would not have been included in the class of eligible recipients. Moreover, parts 311.6 and 311.7 appear in the Postal Manual in a subchapter referring only to the duties of a postmaster, and should thus normally be construed so as to restrict only his duties.

We need not, however, construe these provisions on their face, but may examine their history which in this case conclusively supports our conclusions. Section 41.4, the prior provision corresponding to what are now parts 311.6 and 311.7, was expressly directed to "[P]ostmasters and others in the postal service." That these "others" did not include postal inspectors is made clear by the nature of the three exceptions to its general prohibition of the furnishing of information concerning mail matter. First, as pointed out above in connection with the words of part 311.6, the exist-

ence of "post office inspectors" as an eligible class of recipients of such information belies an argument that these persons were also addressees of the prohibition. The second exception in Section 41.4 allowed "postmasters" to give to officers of the law, to aid in the apprehension of fugitives from justice, information concerning mail matter. Only postmasters were excepted for this purpose. Similarly, the now defunct subsection (b) of the prior section created an exception solely available to "postmasters". Thus, if the general prohibition of Section 41.4 extended to postal inspectors, as well as to postmasters and other employees, it would have been clear that postal inspectors were barred from furnishing information concerning fugitives and indeed all other information concerning mail matter, to law enforcement officers. Such an interpretation would be absurd in view of the fact that postal inspectors were then and remain the chief sources of aid and information in the Postal Department to officers of the law. See Section 963(32) (K), Title 39 U.S.C.A.[1] Indeed, to construe the prohibition as extending to postal inspectors would be to attribute an anomalous purpose to the draftsmen; *viz.*, to limit postal inspectors more strictly than postmasters in furnishing information to persons outside the postal department. That such a construction is wholly unwarranted is further indicated by the fact that in the one case arising under Section 41.4 involving a "mail watch" no question was raised whether the furnishing of resultant information to the Department of Justice by postal inspectors was prohibited by the Regulations. See United States v. Costello, 2 Cir., 1958, 255 F.2d 876. Nor, as we understand his argument, does the appellant question the soundness of the decision in the cited case.

We conclude, therefore, that postal inspectors were not meant to be included in that class of postal employees limited by Section 41.4 in their use of information concerning mail matter.

It remains to consider whether the 1954 changes by their terms or intendment extended these Regulations to postal inspectors for if they did not so extend them at that time there is no basis for holding them applicable to the facts at bar. An examination of the 1954 amendments reveals that they consisted in the main of additions to and deletions of the words of Section 41.4. First, the initial sentence of Subsection 41.4(a) was excised. It is apparent that this change does not support any argument relevant to our present inquiry. Second, the addition of the sentence "[D]o not give such information to others", does not indicate in any way that the class of persons prohibited from giving "such information to others" was meant to be broadened. The only substantial change made in 1954 was the deletion of Subsection (b) of Section 41.4. That subsection, and the exception to the general prohibition contained therein, presumably had given the authority to local postmasters for the supplying of information to the staff of the Senate Committee. As pointed out above, however, that subsection gave this authority solely to postmasters and its excision, therefore, could take away authority solely from postmasters. Thus, an examination of the literal changes that were made in 1954 gives no indication that they were intended as a restriction on the authority of postal inspectors who up until that time were clearly not within their scope. It follows that part 311.6 cannot be con-

1. Section 963. Key positions; job descriptions; salary level

\*   \*   \*   \*   \*

"(32) Position.—Postal Inspector—Level 12.

\*   \*   \*   \*   \*

"(K) In any criminal investigation, develops evidence, locates witnesses and suspects; apprehends and effects arrests of postal offenders, presents facts to United States attorney, and collaborates as required with Federal and States prosecutors in presentation before United States commissioner, grand jury, and trial court."

strued as prohibiting postal inspectors from furnishing information obtained by a "mail watch" to the Department of Justice.

This conclusion is consistent with the spirit as well as the wording of the 1954 changes. assuming that they were brought on by the criticism of the Special Senate Subcommittee. The Subcommittee's report did not condemn the "mail watch" procedure generally and thus, did not even by implication, suggest a general ban on its use to detect and apprehend criminals.[2] Indeed, the changes that were made would seem responsive to the criticisms that were contained in the report. Postal inspectors were given exclusive authority to furnish information of the type involved in the 1954 incident to representatives of the federal government. Postmasters, due to the excision of subsection 41.4(b), may no longer do so.[3] Ordinarily the inspectors' duties and authority would not give them occasion to even possess information such as was involved in the 1954 incident since such information would seldom concern criminal investigation or internal departmental matters. In any event, such information when available, would be channeled through the postal inspectors' office. In this way a more effective check on the indiscreet use of information concerning mail matter was provided while law enforcement procedures were left substantially unhindered.

Since there was no violation of the Postal Regulations we need not consider the question whether evidence obtained in violation of such regulations would be admissible in a federal court. The motion to suppress having been properly denied and there being no other questions presented on this appeal, the judgment of the court below must be affirmed.

2. The conclusion of the report was as follows:

"The committee received no testimony and no evidence to indicate that mail covers were ever maintained against any other Member of the United States Senate. In fact, the testimony indicates that it has never been done on any other occasion. The committee, however, finds it almost impossible to make an exhaustive finding on this point since a conclusive determination could be made only after examining the records of every post office in the Nation.

"Your committee desires in strong language to condemn the use of mail covers by a Senate committee or its staff.

"The committee's attention was directed to certain sections of the United States Code, sections 1701, 1702, and 1703, title 18, dealing with obstruction of mails, obstruction of correspondence, and delay or destruction of mail or newspapers. This committee has no authority to refer this matter to the Attorney General of the United States, but the committee recommends that the Senate refer the testimony and exhibits to the Attorney General for such action as he deems appropriate." 101 Cong.Rec. 2564 (1955).

3. The Committee report makes it plain that the offending disclosures there were made by local Postmasters and not postal inspectors.