THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH CORBO, Appellant.

First Department, December 6, 1962.

*Frances Kahn* for appellant.

*Bertram R. Gelfand* of counsel (*Isidore Dollinger, District Attorney*), for respondent.

VALENTE, J. On July 21, 1950, Alfred Loreto — an off-duty policeman of the New York Police Department — was standing on the sidewalk in front of his home in the Borough of The Bronx when he observed a Buick automobile with three men in it proceeding down the street in an erratic and unusual manner. Thereupon, the policeman entered his car and followed the Buick for about two blocks until it came to a stop after crashing into a hedge. Two men then jumped out of the car and ran to the officer's automobile, which had stopped some distance behind. One of the men — appellant Corbo herein — while struggling with the policeman in his car, shot and killed him.

In August, 1950, appellant and Rudolph Santobello — the other man who ran from the Buick with Corbo — were indicted for the crime of murder in the first degree for the killing of Officer Loreto. Since that time, the case has followed a checkered course in the courts. In June, 1951, appellant and Santobello were convicted of murder in the first degree, and, upon the jury's recommendation, sentenced to life imprisonment. The conviction was affirmed. (*People* v. *Corbo*, 284 App. Div. 273, affd. 307 N. Y. 928.) Corbo's application for certiorari was denied. (*Corbo* v. *New York*, 348 U. S. 977.)

However, in September, 1959, the United States Court of Appeals, Second Circuit, reversed a denial of a petition by Corbo for habeas corpus by the United States District Court for the Northern District of New York, and directed the issuance of the writ on the ground that statements and admissions made by him, after his arrest and prior to his arraignment — which were admitted into evidence at his trial — were coerced in violation of due process of law. (*United States ex rel. Corbo* v. *La Vallee*, 270 F. 2d 513, cert. denied 361 U. S. 950.) Our Court of Appeals

then ordered a new trial as to appellant. (*People* v. *Corbo*, 7 N Y 2d 990.)

Upon the second trial, he was convicted of murder in the second degree and sentenced to a term of from 30 years to a maximum of his natural life. The appeal from that conviction is now before us.

The theory of the prosecution on both the first and second trials was that the homicide occurred in the course of the attempt by appellant and Santobello to steal the policeman's automobile.* In both trials, the defense was that the appellant, mistaking Officer Loreto's automobile for one belonging to a confederate, got into it in his flight from the Buick; and that, when Officer Loreto struggled with him, a gun appellant had in his hand — which he claimed to have taken from the third person in the stalled automobile — went off accidentally and killed the officer.

Although the evidence on this record is sufficient to sustain appellant's conviction, there must nevertheless be a reversal and a new trial ordered for substantial and prejudicial error. Appellant, as in the first trial, testified in his own behalf and, in the course of his cross-examination, the Assistant District Attorney, over objection of defendant's counsel, was permitted to elicit testimony as to his conviction and that of Santobello on the first trial and their sentence to life imprisonment. After denying a motion for a mistrial, the Trial Judge concluded that such questioning should not have been permitted and thereupon admonished the jury to remove from their minds any knowledge of the outcome of the prior trial.

Section 464 of the Code of Criminal Procedure — in the clearest language — provides that the granting of a new trial places the parties in the same position as if no trial had been had and that " the former verdict cannot be used or referred to, either in evidence or in argument ". In view of this statutory interdiction against the use in a new trial of a verdict upon a prior trial either in evidence or in argument, the interrogation of the appellant regarding his conviction upon the former trial and the nature of the sentence imposed was clearly error. Nor does it require much argument to establish the prejudicial nature of such disclosures.

The People urge, however, that since the court admonished the jury that they were to disregard any knowledge of the result of the earlier proceeding in arriving at a verdict, there was no like-

---

* It should be noted that at the time Corbo and Santobello approached the policeman's car, they were then fleeing after the commission of a crime on a third person in the Buick automobile.

lihood that appellant's rights were prejudiced. We conclude that no amount of cautionary instructions could remove from the minds of the jurors this testimony as to the conviction on the former trial, and cure the resulting prejudice. As was said in *People* v. *Levan* (295 N. Y. 26, 36) : " The virus thus implanted in the minds of the jury is not so easily extracted "; and, again, in *People* v. *Carborano* (301 N. Y. 39, 42) : " Nor can a court's instructions to jurors to dismiss from mind matters improperly brought to their attention always assure elimination of the harm already occasioned ". (See, also, *People* v. *Jackson*, 7 N Y 2d 142, 145; *People* v. *Robinson*, 273 N. Y. 438, 445–446.)

The conviction should therefore be reversed because of error which substantially affected defendant's right to a fair trial.*

Since there must be a new trial, it is unnecessary to devote much time on other alleged errors. However, we must allude to the questionable propriety of using the testimony of the codefendant at the first trial while cross-examining the appellant. In an attempt to impeach the testimony of appellant, the prosecution was permitted to read from the testimony given by the codefendant at the former trial. Certainly what Santobello testified to on the former trial was not binding on appellant. That the prosecutor may have thought Santobello's testimony to be true and accurate did not give such testimony the status of any fact proven at the second trial. Therefore, it was error to permit the prosecutor to utilize Santobello's testimony to impeach the appellant.

Of course, appellant may be retried on the original indictment which charges murder in the first degree. A reversal of a conviction places a defendant in the same position as if there had been no trial. (*People* v. *Ercole*, 4 N Y 2d 617, 620; *People* v. *McGrath*, 202 N. Y. 445, 451; *People ex rel. Hetenyi* v. *Johnston*, 10 A D 2d 121, appeal dismissed 8 N Y 2d 913.) As stated in *Hetenyi*, the case of *Green* v. *United States* (355 U. S. 184) does not apply in New York.

Upon a new trial, in addition to the witnesses called in the second trial, the People have available as part of their case the admissions made by defendant at the former trial that he was at the scene, that he had a gun, and that the policeman was shot.

---

* Since it was inevitable that in the course of the second trial some allusion would be made to the former trial, the court should have considered giving an instruction to the jury, at the commencement of the second trial, that there had been a prior trial to which reference might be made in the course of the current trial and that the jurors should not speculate as to why it was necessary to have a second trial or as to the result of the first trial, and that the jury was not to consider the prior trial except insofar as the court permitted any evidence regarding it.

Admissions made by a defendant in testimony given in a former trial — where the defendant has not asserted his privilege against self incrimination — may be used against him in a subsequent trial of the same case. (*Edmonds* v. *United States,* 273 F. 2d 108, 112–113; *United States* v. *Grunewald,* 164 F. Supp. 640, 644; 2 Wharton, Criminal Evidence [12th ed.], § 475; 2 Underhill, Criminal Evidence [5th ed.], § 381; Anno. 5 A. L. R. 2d 1406, 1408–1412.)

Should the People, upon a retrial, deem it necessary, despite the admissions of the defendant at the second trial, to introduce evidence as to the finding of the gun, a question may arise as to the admissibility of such evidence. Appellant's counsel contended that there was a conflict in testimony in the first and second trials as to how the gun came to be found by the police officers. Upon the second trial, the officer testified that the murder weapon was discovered without any assistance or direction from the appellant. Yet, the testimony of Officer Kelly on the first trial would indicate that the discovery of the gun resulted from admissions made by the appellant.* Upon a retrial, therefore, the question may arise as to whether the " fruits " of an illegally obtained confession may be introduced in evidence.

In *Duffy* v. *People* (26 N. Y. 588) it was held that facts discovered as the result of a coerced confession are nevertheless admissible in evidence. It is doubtful that this represents the law today. *Duffy* was decided in 1863 long before the doctrine was announced by the United States Supreme Court that involuntary confessions were excluded as in violation of due process. (*Brown* v. *Mississippi,* 297 U. S. 278; *Spano* v. *New York,* 360 U. S. 315; *Blackburn* v. *Alabama,* 361 U. S. 199.)

In *Mapp* v. *Ohio* (367 U. S. 643) it was held that evidence obtained as a result of an unlawful search and seizure in violation of the Fourth Amendment is inadmissible in a State court. Such evidence is considered as the " fruit of the poisonous tree ". (See *Nardone* v. *United States,* 308 U. S. 338; *Silverthorne Lbr. Co.* v. *United States,* 251 U. S. 385.) That doctrine has been applied by the Federal courts, not only in search and seizure cases, but also as to evidence obtained in violation of other Federal statutes. (See *United States* v. *Schwartz,* 283 F. 2d 107.) In *Wong Sun* v. *United States* (288 F. 2d 366), it was held that an illegal arrest did not so contaminate the voluntary preconfession statements so as to prevent the use by

---

* In *United States ex rel. Corbo* v. *La Vallee* (270 F. 2d 513, 517, *supra*) Judge LUMBARD states: " Corbo led the police to the vacant lot where he thought he might have thrown the gun ".

the officers of the information given therein. However, certiorari was granted (370 U. S. 908) and the case has not yet been decided by the Supreme Court.

In line with the decision in *Mapp* v. *Ohio* (*supra*) our State courts have held that evidence obtained as a result of an illegal search and seizure is inadmissible. (*People* v. *O'Neill,* 11 N Y 2d 148; *People* v. *Moore,* 11 N Y 2d 271; *People* v. *Rodriguez,* 11 N Y 2d 279.) As was said by FULD, J., in *People* v. *Rodriguez* (*supra,* p. 286) : '' In short, the exclusionary rule covers not only the evidence illegally obtained, but the product of the unlawful search as well. The underlying rationale is that government may not violate the constitutional guarantee (U. S. Const., 4th Amdt.) and ' use the fruits of such unlawful conduct to secure a conviction.' ''

However, in *People* v. *Dinan* (11 N Y 2d 350, cert. denied Oct. 22, 1962) convictions were sustained where intercepted telephone conversations obtained by wire tapping, authorized by orders of the State courts, were introduced in evidence. Such interceptions are interdicted by section 605 of the Federal Communications Act. A distinction was drawn in that case between the violation of a Federal statute and the violation of a constitutional prohibition such as granting immunity from unreasonable search and seizure.

It must be remembered that in *United States ex rel. Corbo* v. *La Valle* (270 F. 2d 513, 521, *supra*) Corbo's confessions were excluded because obtained '' in violation of his constitutional right to due process ''. Hence, any evidence obtained as a result of those confessions are '' fruits '' of the violation of a constitutional right rather than a statutory enactment. Therefore, the doctrine of *Mapp* v. *Ohio* may be applicable to such evidence rather than the holding in *People* v. *Dinan* (*supra*). In California, where the court, in *People* v. *Cahan* (44 Cal. 2d 434) anticipated the rule in *Mapp* v. *Ohio* by some seven years, it was held in *People* v. *Ditson* (57 Cal. 2d 415) that evidence which police discovered essentially by virtue of having obtained an involuntary confession was inadmissible.

We do not, at this time, have to decide the question as to the admissibility of the gun in evidence. However, we have discussed the matter so that adequate consideration may be given the problem should it arise on the retrial. If in fact the gun was discovered by virtue of the involuntary confession obtained in violation of due process, then there would seem to be no rational basis for distinguishing such evidence from evidence secured in contravention of the constitutional immunity from unlawful search and seizure, which is inadmissible under *Mapp*

v. *Ohio.* It will be for the court, without the jury, to determine the admissibility of the gun in evidence, as a preliminary question of law, should the evidence be proffered by the People. (See *People* v. *Rodriguez,* 11 N Y 2d 279, 286–287, *supra*; *People* v. *Coffey,* 11 N Y 2d 142.)

As a concluding caveat, we note that the charge to the jury included instructions as to justifiable homicide as well as to excusable homicide. There was no defense either of excusable or justifiable homicide. As we pointed out in *People* v. *Wright* (17 A D 2d 151), such instructions are improper where the issues are not in the case. Although, unlike *People* v. *Wright,* no exception was taken in the instant case to the charge in that respect, we deem it necessary to advise against its repetition on the retrial of the indictment.

The conviction should be reversed on the law and a new trial granted in the interests of justice.

BREITEL, J. P., McNALLY, STEVENS and EAGER, JJ., concur.

Judgment of conviction unanimously reversed on the law and a new trial ordered in the interests of justice.