STATE OF CONNECTICUT *v*. ROY F. DARWIN

THIM, RYAN, SHAPIRO, FITZGERALD and KLAU, Js.

Argued June 3—decided July 6, 1971

*John F. Shea, Jr.,* special public defender, with whom was *Scott B. Clendaniel,* for the appellant (defendant).

*Robert J. Pigeon,* state's attorney, for the appellee (state).

THIM, J. The defendant, Roy F. Darwin, was first arrested on December 6, 1963, on a coroner's warrant. He was held in the custody of the state police until the afternoon of December 8. On December 6 and 7 an automobile owned by the defendant's wife was searched, and property contained therein belonging to both the defendant and his wife was seized under the purported authority of the Tolland County coroner. Among the items taken from the vehicle were dust vacuumings from the floor and the front seat. Tests were made on the front seat at the laboratory of the state department of health. On December 8, 1963, the defendant was served with a bench warrant. On February 13, 1964, following a hearing on a motion to suppress, the December 6 and 7 search was held to be unconstitutional and all properties then seized were ordered returned. The vacuumings and the seat were replaced in the vehicle. On February 20, 1964, the vehicle was returned to the defendant's wife. That day, after the return, the state's attorney applied to the court for a search warrant for the same vehicle and for two flashlights contained therein. On that day, the warrant was issued and the vehicle was again seized. The vehicle was again vacuumed, and tests were done on the vacuumings and were redone on the seat. The results of the tests were introduced at the second trial. The vacuumings contained hairs almost identical to those found on the victim's clothing. The front seat of the car was stained with human blood.

On December 18, 1963, the defendant was indicted for first-degree murder, and on January 24, 1964, he entered a plea of "Not Guilty." After a jury trial, on March 25, 1964, a verdict was returned finding the defendant guilty of second-degree mur-

der. That verdict was accepted and recorded, and on April 7, 1964, the defendant was sentenced to the Connecticut state prison for life. He appealed to this court from the judgment rendered and it was affirmed. *State* v. *Darwin,* 155 Conn. 124, 230 A.2d 573. The defendant then petitioned the United States Supreme Court for certiorari and it was granted. That court then reversed the conviction and remanded the case for further proceedings. *Darwin* v. *Connecticut,* 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630. On June 25, 1968, we remanded the case to the Superior Court for a new trial. *State* v. *Darwin,* 156 Conn. 661, 243 A.2d 82.

On December 10, 1968, the defendant filed a motion to suppress, requesting the return of the items seized under the February 20, 1964, search warrant and asking that the use of those items be suppressed due to inadequacies in the warrant and the issuance of that warrant. That motion was denied. The defendant moved for a dismissal of the indictment on December 23, 1968, alleging that the bench warrant was defective. That motion also was denied.

On January 15, 1969, after a second trial to a court of three judges pursuant to his election under General Statutes § 54-82, the defendant was again found guilty of second-degree murder, and on February 4, 1969, was sentenced to the state prison for life. From the judgment rendered the defendant has appealed, claiming errors in the denial of his motions to suppress and to dismiss, and in the trial. On the two motions, he has claimed as error (1) the refusal of the court to find certain admitted or undisputed material facts, (2) that certain conclusions were allegedly not supported by the facts found and (3) the court's failure to reach certain conclusions. On the trial, the defendant has assigned

as error (1) the court's refusal to find certain admitted or undisputed material facts, (2) the finding of certain facts without evidence, (3) the finding of certain facts in language of doubtful meaning, (4) that certain conclusions were allegedly not supported by the facts found, (5) the overruling of the defendant's claims of law and (6) the court's failure to reach certain conclusions.

## I

We begin with the motion to suppress. It is contended, inter alia, that the affidavit for the search warrant was insufficient to enable the judge to make an independent determination of probable cause. The purpose intended to be served by the affidavit "is to enable the issuing authority to weigh the persuasiveness of the facts relied upon by the affiant or complainant, and, from them, to determine whether the necessary probable cause exists for the issuance of the warrant." *State* v. *Allen,* 155 Conn. 385, 391, 232 A.2d 315; *Giordenello* v. *United States,* 357 U.S. 480, 486, 78 S. Ct. 1245, 2 L. Ed. 2d 1503; *State* v. *DeNegris,* 153 Conn. 5, 8, 212 A.2d 894. Thus, the underlying facts and circumstances as set forth in the affidavit must be sufficient to enable the issuing authority to perform its function. *State* v. *Allen,* supra; *State* v. *DeNegris,* supra.

The affidavit here gave four grounds for issuing the warrant. The four grounds state, basically, that a murder was committed, that the defendant was arrested on a bench warrant for that murder, that complaints from certain reputable individuals had been received, that the records of the Tolland County state's attorney's office indicate that the defendant committed the murder, and that the flashlights "and the motor vehicle herein described . . .

was [sic] used by said Roy F. Darwin in committing said crime of murder."

Relative to this affidavit, the specific question which the court was required to answer was whether there was a valid reason for searching and seizing, inter alia, the described vehicle. Certainly the mere fact that one is charged with a crime does not give cause to search and seize anything he owns or has used. The court was, therefore, required to determine, independently, that it was likely that the defendant had used the vehicle and flashlights in committing the crime with which he was charged. The affidavit is totally devoid of any facts as to this. It states only the conclusion that the vehicle was used in the commission of the crime. This was clearly insufficient. The court could not possibly make an independent determination of the existence of probable cause from the facts stated in the affidavit. The search warrant was, therefore, defective.

While the state, during oral argument before us, conceded that the search warrant was defective, it contends that the defendant could not attack it for three reasons, (1) that by not attacking it before or during the first trial the defect was waived, (2) that the car was owned by Mrs. Darwin and thus the defendant had no standing and (3) that by reversing on the ground of an inadmissible confession, and by not mentioning the search warrant, the validity of which the defendant had raised before it, the United States Supreme Court implied an affirmance of this court's dicta which stated that the warrant was valid. *State* v. *Darwin*, 155 Conn. 124, 144–47, 230 A.2d 573, reversed and remanded, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630.

The first trial ended in a verdict of guilty and a judgment was rendered. That judgment was ap-

pealed, first to this court and then to the United States Supreme Court. The end result was a reversal and the ordering of a new trial. The purpose of a new trial is to have an error-free trial. The trial is "new" in every sense. It is as if no trial had ever taken place. See *State* v. *Adjmi,* 170 So. 2d 340 (Fla.); *Cichos* v. *State,* 246 Ind. 680, 208 N.E.2d 685; *People* v. *Corbo,* 17 App. Div. 2d 351, 234 N.Y.S.2d 662. An invalid search, therefore, which was not contested on the first trial may be contested by a motion to suppress prior to the second trial. *United States* v. *Romano,* 241 F. Sup. 933 (D. Me.); *United States* v. *Watson,* 146 F. Sup. 258 (D.D.C.). By the same token, evidence which was not objected to at the first trial may be contested at the second. It would not be compatible with the theory of a new trial to tie the hands of counsel so that any errors waived in the first trial are forever waived. Thus, the defendant did have a right to raise the issue of a defective search warrant; that right had not been waived.

As to the claim that the defendant had no standing to challenge the search and seizure, the general rule is that one must have been a victim of a search or seizure; the search and seizure must have been directed against him. *Jones* v. *United States,* 362 U.S. 257, 261, 80 S. Ct. 725, 4 L. Ed. 2d 697. It has often been stated that the challenger must show ownership or possession of the seized property, or have "a substantial possessory interest in the premises searched." Ibid. That possessory interest must be "greater than the interest of an 'invitee or guest.'" Id., 263. In *Jones,* however, that rule was modified. The court observed that private property law distinctions should not be applied to the administration of criminal law, for "[t]o do so would not

comport with our justly proud claim of the procedural protections accorded to those charged with crime." *Jones* v. *United States,* supra, 267. The court then enunciated the following rule: "[A]nyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." Ibid. It follows that one who has a substantial interest in the property searched, and who is absent therefrom because he is in the custody of the police, would have standing to challenge the validity of that search. Here, the car was registered in the defendant's wife's name. To hold, however, that a vehicle titularly owned by a wife is not also owned by the husband for purposes of search and seizure would seem to be an improper stretching of technicalities. Obviously, the defendant used the car on some occasions, although the record shows that such occasions were rare. Clearly, the search and seizure was directed against the defendant. The only reason that the search and seizure was desired was because the defendant had used the car. If he had used another car on the night of the murder that car would have been the object of the warrant. Since the car belonged to his family, and since the search and seizure was directed against him, the defendant did have standing to challenge the validity of the warrant.

The state also contends that the defendant cannot question the validity of the search warrant because that issue was raised before the United States Supreme Court, but was not the basis for the reversal. In effect, the claim is that since the court reversed on other grounds, it affirmed the validity of the search warrant by implication, and, thus, that issue could not be retried. Surely, no authority is

required for the proposition that a court will rarely decide an issue when not necessary. On appeal to this court after the first trial, we held, concerning attacks on the validity of the search warrant: "[T]he . . . claims now come too late. The court was never asked to rule on the claims, and under settled Connecticut practice they cannot now be considered." *State* v. *Darwin,* 155 Conn. 124, 142, 230 A.2d 573. Thus, the United States Supreme Court, in reversing the defendant's conviction on the ground of an involuntary, and therefore inadmissible, confession, had no need to consider the claim concerning the validity of the search warrant. Since there would be a new trial, the trial court could be asked to rule on the defendant's claims. We further note that the claim that the search warrant was invalid, as raised before the United States Supreme Court, was based on the proposition that the affidavit relied on information derived from illegal, and thus involuntary, confessions. Even a direct holding that there was no merit to such a claim would not preclude the warrant from being invalid on other grounds.

The appeal to the United States Supreme Court was based on several grounds. Although only one ground was discussed, the disposition was phrased in broad language: "[T]he petition for a writ of certiorari . . . [is] granted. The judgment below is reversed and the case is remanded for further proceedings not inconsistent with our decision herein." *Darwin* v. *Connecticut,* 391 U.S. 346, 349, 88 S. Ct. 1488, 20 L. Ed. 2d 630. An appellate opinion is authority only for what is decided. *United States* v. *Kees,* 198 F. Sup. 575 (E.D. Ill.); *Schmid* v. *United States,* 154 F. Sup. 81 (E.D. Ill.). The language of an opinion is given effect only with

respect to the question actually decided. *Streuli* v. *Brooks,* 203 Tenn. 373, 313 S.W.2d 262. Further, where the United States Supreme Court denies certiorari it does not signify approval, on the merits, of the state court opinion. *Sheppard* v. *Ohio,* 352 U.S. 910, 77 S. Ct. 118, 1 L. Ed. 2d 119; *Brown* v. *Allen,* 344 U.S. 443, 448–97, 73 S. Ct. 397, 97 L. Ed. 469; *State ex rel. Ford* v. *Morris,* 236 F. Sup. 780, 782 (W.D. Tenn.); *Anderson* v. *Gladden,* 188 F. Sup. 666, 669 (D. Ore.); *Calhoun* v. *J. I. Case Co.,* 150 F. Sup. 189, 190 (N.D. Ohio). Where that court grants certiorari, and reverses on a single issue, it would be improper to consider that as signifying approval of the other issues raised before it. All that the opinion states is that there must be a new trial and that the confession is inadmissible. Any other claim made in the petition for certiorari may be raised in the trial court in an appropriate manner.

The defendant could properly challenge the validity of the search warrant, and he properly raised the issue before the trial court. It is our conclusion that the warrant was improperly issued and that, therefore, the defendant's motion to suppress should have been granted. Not to have done so was error, and a new trial is thus necessary.

## II

The defendant claims that the trial court should have granted his motion to dismiss because the bench warrant was improperly issued. This is an attack on the court's jurisdiction over the person. Such a claim may be waived by submitting to the jurisdiction of the court, and in a criminal matter this is done by pleading guilty or not guilty. *State* v. *Tropiano,* 158 Conn. 412, 430, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288;

*Reed* v. *Reincke,* 155 Conn. 591, 598–99, 236 A.2d 909. Once the defendant's plea was entered no attack could be made on the court's jurisdiction. *State* v. *Tropiano,* supra. Here, the court's jurisdiction was never questioned by the defendant before he entered his plea of not guilty in January, 1964. Although the case was remanded for a new trial, he was never again put to plea. He received a new trial. The retrial procedure commenced at a point following the plea. *State* v. *Nelson,* 65 N.M. 403, 338 P.2d 301; see *Miller* v. *United States,* 320 F.2d 767, 769 n.3 (D.C. Cir.). Thus, the defendant may not now question the validity of the bench warrant which is an attack on the court's jurisdiction.

III

Since a new trial is necessary a discussion of the testimony of the sheriff and the guard is in order. On the night of December 8, 1963, the defendant was in a cell at the Tolland County jail. A guard was present. According to the testimony of the guard, the defendant asked him to recite the Lord's Prayer with him. At the conclusion of his recitation of the prayer, the defendant asked for forgiveness "for his sin" and sobbed. On about December 15, 1963, while still confined at the Tolland County jail, the defendant requested an interview with the sheriff who was in charge of the jail. That interview was granted. According to the testimony of the sheriff, the defendant stated that he had not yet told his lawyers that he had done the killing. *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, is, of course, not applicable to this case. It appears, however, that the trial court, in determining the voluntariness of these alleged admissions, considered only the conduct of the defendant. The court

apparently found that the comments or actions were not requested by either of the two authorities involved, and thus they were voluntary. While the test which the trial court applied was proper, it was but one of the required tests.

The incident with the guard took place spontaneously. The guard was not questioning the defendant, and in fact was not even conversing with him. Even after the defendant requested that the guard pray with him there was no conversation. Under the circumstances we do not believe that any warning was necessary, even were one required if an interrogation were under way. The circumstances of the conversation with the sheriff were somewhat different. There, the defendant was actually conversing with the sheriff. The fact that the sheriff was not doing the interrogating is fundamentally immaterial. While it is true that the defendant had been warned of his constitutional rights when he was presented before the clerk of the Superior Court about a week before, we are not certain that the application of that warning to the radically different situation concerning the sheriff was evident to the defendant.[1] Put differently, the warnings were given by a judicial officer at a court. The defendant's conversation took place with the sheriff, an enforcement officer, at a jail. We believe that the defendant should have been warned of his rights by the sheriff before the interview began. His not having been warned, however, is not necessarily error which renders his alleged admissions inadmissible. The question is: Was the defendant aware that the warnings given in court applied to his conversation

---

[1] Pursuant to General Statutes § 54-43, he was advised that "he has a right to retain counsel, that he has a right to refuse to make any statement, and that any statement he makes may be introduced in evidence against him."

with the sheriff at the jail? This is a question which should be determined by the trial court prior to admitting the testimony.

One other portion of the test of voluntariness is particularly important in this case. This is the so-called "cat-out-of-the-bag" test. As stated by the United States Supreme Court, "after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first." *United States* v. *Bayer,* 331 U.S. 532, 540, 67 S. Ct. 1394, 91 L. Ed. 1654; *Darwin* v. *Connecticut,* 391 U.S. 346, 350–51, 88 S. Ct. 1488, 20 L. Ed. 2d 630 (Harlan, J., concurring and dissenting). As stated by Justice Harlan in *Darwin,* supra, 351, "[W]hen the prosecution seeks to use a confession uttered after an earlier one not found to be voluntary, it has . . . the burden of proving not only that the later confession was not itself the product of improper threats or promises or coercive conditions, but also that it was not directly produced by the existence of the earlier confession." The same rule should apply to admissions which, while not technically confessions, are similar in effect.

Certainly, all admissions or confessions which follow invalid confessions are not a result of the prior confession. The United States Supreme Court has so held. *Bayer* v. *United States,* supra. Two primary factors must be considered in order to determine whether or not such statements are voluntary and thus admissible, (1) the lapse of time between the invalid confession and the later statement,

(2) whether the confessor has been confined during that period. See *Boulden* v. *Holman,* 394 U.S. 478, 89 S. Ct. 1138, 22 L. Ed. 2d 433; *Beecher* v. *Alabama,* 389 U.S. 35, 88 S. Ct. 189, 19 L. Ed. 2d 35; *United States* v. *Bayer,* supra.

Here, the defendant confessed on December 7 and 8, 1963. His alleged admission to the guard took place the night of December 8. His admission to the sheriff took place about seven days later, having been confined to jail during the interim. In neither case was the stream of events broken. Also, at neither time could he have been aware that his signed confessions would be inadmissible. His statements, therefore, might well have been a result of "the erroneous impression that he . . . [had] nothing to lose . . . [in his] decision to speak a . . . third [or fourth] time." *Darwin* v. *Connecticut,* supra, 351 (Harlan, J., concurring and dissenting). This test was not applied by the trial court. Since the application of this test requires a factual determination, we believe that its application should be left to the trial court.

Another matter concerning the alleged admissions, which was not raised by either the defendant or the state, and was, therefore, never passed on by the trial court, was the admissibility of these statements due to a possible deprivation of the defendant's right to counsel.[2] These statements were made during what was certainly a critical stage of the proceedings, and, therefore, the defendant clearly had a right to have counsel present. *Massiah* v. *United States,* 377 U.S. 201, 205, 84 S. Ct. 1199, 12 L. Ed. 2d

---

[2] The defendant did claim that he was not advised of his right to counsel and did object to the overruling of that claim. That claim, however, went only to the determination of voluntariness. The present matter concerns the defendant's right to have counsel present when he spoke to the sheriff.

246; see *State* v. *McLeod,* 173 Ohio St. 520, 184 N.E.2d 101, reversed, 378 U.S. 582, 84 S. Ct. 1922, 12 L. Ed. 2d 1037; *State* v. *McLeod,* 1 Ohio St. 2d 60, 203 N.E.2d 349, reversed (citing *Massiah* v. *United States,* supra), 381 U.S. 356, 85 S. Ct. 1556, 14 L. Ed. 2d 682.

The federal court decisions concerning a defendant's right to counsel after he has been formally charged with the commission of the crime as the defendant, and the admissibility of statements made absent counsel under such circumstances, seem to have taken two divergent directions. One line of decisions, exemplified by *United States ex rel. O'Connor* v. *New Jersey,* 405 F.2d 632, 636 (3d Cir.), cert. denied, sub nom. *Yeager* v. *O'Connor,* 395 U.S. 923, 89 S. Ct. 1770, 23 L. Ed. 2d 240, holds that a defendant "commands an absolute right to counsel after indictment, thereby vitiating the validity of all oral communications between the defendant and the police made in the absence of counsel. The 'investigatory v. accusatory' test of *Escobedo* [378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977] and the 'in custody' test of *Miranda* [384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694] employed to determine when the right to counsel attaches, have no application once the indictment has formally stamped the suspect as *the* defendant; only a clear, explicit and intelligent waiver may legitimate interrogation without counsel following indictment." See *Massiah* v. *United States,* supra; *Hancock* v. *White,* 378 F.2d 479 (1st Cir.); *United States ex rel. Russo* v. *New Jersey,* 351 F.2d 429 (3d Cir.); *State* v. *Green,* 46 N.J. 192, 215 A.2d 546. The apparently contrary and most recent decision is *United States* v. *Crisp,* 435 F.2d 354, 358 (7th Cir.), cert. denied, 402 U.S. 947, 91 S. Ct. 1640, 29 L. Ed. 2d 116, where it was

held that a defendant may knowingly and voluntarily waive his right to counsel after indictment, that the waiver need not be written and signed, and that statements made to a law enforcement officer after such a waiver are admissible.

The United States Supreme Court has denied certiorari on both holdings, and thus the precise rule is uncertain. It is not clear whether all statements made after indictment and absent counsel are inadmissible, or whether only those made absent counsel where there has been no appropriate waiver of the right to counsel are inadmissible. It is clear that either rule would also apply after arrest on a bench warrant and confinement but before indictment, and it is also clear that the rules are sufficiently retroactive so as to apply to the case at bar. See *O'Connor,* supra, 637. The rule does apply where the statement itself is voluntary, and where there is no actual interrogation. *Hancock* v. *White,* supra, 482.

We are of the opinion that both of the stated rules can be reconciled. What seems to be required is that once charged with a crime, a defendant must know that any statements he might make can be used against him and that any time he chooses to make a statement to a law enforcement official he may have counsel present. Thus, a statement made by a defendant after he is charged with a crime is only admissible if his counsel is present, or if he knowingly and voluntarily waives his right to have counsel present.

This matter was neither presented to the trial court, briefed or argued before us. The finding of facts and the conclusions contain nothing concerning the defendant's knowledge of his right to have counsel present or a waiver of that right. We, therefore, do not have sufficient information in the

record to determine whether or not a knowledgeable waiver occurred. We thus leave it to the trial court at the new trial to reach such determinations and to apply the rule here enunciated.

## IV

A few other matters which have been raised in this appeal should be commented upon at this time. We do not believe, as the defendant claims, that the evidence on this trial was insufficient to sustain a verdict of guilty. Even absent the evidence which we have held must be suppressed, we cannot say that the trial court reasonably could not have found the defendant guilty on all of the other evidence. Since a new trial is necessary, and since the admissibility of certain other evidence must be passed on by the trial court, we do not believe that a discussion of the sufficiency of the evidence is either in order or possible at this time.

A new trial being necessary, there is no reason to consider the defendant's claims concerning the portions of his draft finding which the trial court refused to find, the portions of the finding which he claims are unsupported and the conclusions which he claims are not supported by the finding. These matters will be resolved in the further proceedings before the trial court. See *Wehrhane* v. *Peyton,* 134 Conn. 486, 498, 58 A.2d 698.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.