STATE OF CONNECTICUT *v.* ROY F. DARWIN

SUPERIOR COURT        TOLLAND COUNTY        FILE No. 2508

424

Memorandum filed February 9, 1972

*Abbot B. Schwebel,* assistant state's attorney, for the state.

*John F. Shea, Jr.,* special public defender, for the defendant.

NARUK, J. On December 18, 1963, the defendant was indicted for first-degree murder. On January 24, 1964, he entered a plea of not guilty. After a jury trial, he was found guilty of murder in the second degree on March 25, 1964. Upon appeal to the United States Supreme Court, the conviction was reversed and further proceedings ordered. *Darwin* v. *Connecticut,* 391 U.S. 346. Following a second trial, the defendant was again found guilty of second-degree murder by a three-judge panel on January 15, 1969. Upon appeal to the Connecticut Supreme Court, this second conviction was also set aside and a new trial ordered. *State* v. *Darwin,* 161 Conn. 413.

The defendant, prior to the commencement of the new trial, has filed a motion to suppress certain statements allegedly made by him to the sheriff of Tolland County while the defendant was incarcerated at the Tolland County jail during the interval between his arrest on a bench warrant on December 8, 1963, and his indictment. It is essential to note that prior to his arrest on the bench warrant referred to, the defendant was held by the state police on the erroneous authority of a coroner's warrant for two days. During these two days, he made several confessions and reenacted the crime. The confessions and reenactment were subsequently

found to have been illegally obtained and were ruled inadmissible by the United States Supreme Court in *Darwin* v. *Connecticut,* supra. The facts surrounding these confessions have been stipulated to by the parties for the purposes of this motion.

Customarily, a motion to suppress is used to prevent tangible evidence obtained by an illegal search and seizure from being used as evidence. *State* v. *Mariano,* 152 Conn. 85, 89–90. Questions concerning the admissibility of confessions are usually determined by the trial court, in the absence of the jury, during a trial on the merits. *Lego* v. *Twomey,* 404 U.S. 477; *State* v. *Darwin,* 155 Conn. 124, 161; *State* v. *McCarthy,* 133 Conn. 171, 177. Therefore, prior to ruling on this motion, it is essential for the court to dispose of the jurisdictional question raised by the use of such a motion with regard to a confession or admission alleged to have been illegally obtained.

Before the enactment of § 54-33f of the General Statutes, a motion to suppress did not exist under our practice. *State* v. *Mariano,* supra, 89. As a result of the enactment of this statute in 1963, a person aggrieved by a search and seizure can now make a motion for the return of property and the suppression of its use as evidence, if the property was seized without a proper search warrant or the search warrant was illegally executed. Section 54-33f, as drawn, makes no explicit reference to oral statements or to confessions or admissions. Since, however, it is an almost verbatim adoption of Rule 41 (e) of the Federal Rules of Criminal Procedure, the decisions of the federal courts may be looked to for precedents as to its application to confessions or admissions. In *Smith* v. *Katzenbach,* 351 F.2d 810, 815, the United States Court of Appeals for the District of Columbia expressly stated that motions to suppress applied to confessions pro-

cured in violation of the fifth amendment as well as to tangible property seized in violation of the fourth amendment. The court pointed out that this conclusion could be based not only on a broad interpretation of Rule 41 (e) but also on the application of general equitable principles. To the same effect, see *Austin* v. *United States,* 297 F.2d 356. A similar conclusion was reached on statutory grounds by our own Circuit Court in *State* v. *Penna,* 5 Conn. Cir. Ct. 44, and on nonstatutory grounds by our Supreme Court in *State* v. *Mariano,* supra. Furthermore, in the present case, both the state and the defendant have, stipulated to the instant proceeding, thereby waiving any procedural defects which may have otherwise existed. Consequently, there is no impediment to this court's deciding the defendant's motion on its merits.

The defendant in his motion to suppress claims that the admission of his aforementioned statements to the sheriff would constitute a violation of his rights under the fifth and sixth amendments to the constitution of the United States because (1) they were involuntary, (2) they were the product of earlier illegal confessions, and (3) they were made in the absence of his counsel without a knowing and voluntary waiver of his right to have his counsel present.

The file and evidence offered by the state at the hearing on the motion showed that the defendant had been served with a bench warrant on December 8, 1963, a Sunday. At two o'clock in the afternoon of that day, he was brought to the office of the clerk of the Superior Court in the town of Rockville, where the assistant clerk read to him, verbatim, the applicable provisions of § 2 of Public Acts 1963, No. 126 (as amended, General Statutes § 54-43): "[The] assistant clerk shall thereupon advise such person that he has a right to retain counsel, that he has a

right to refuse to make any statement, and that any statement he makes may be introduced in evidence against him . . . ." The defendant, who was accompanied at this point by three attorneys, thanked the assistant clerk and then held a private conference in another room with his counsel. At the completion of the conference, which was not hurried or interrupted in any way, the defendant was transported to the Tolland County jail. While he was at the jail, and prior to December 16, 1963, he was visited nearly daily by one or more of his attorneys and at least twice by his wife, who was accompanied each time by a minister. On December 16, 1963, the defendant requested and received permission to speak with Sheriff Paul Sweeney, who was in charge of the Tolland County jail. During this interview, which took place in the anteroom of the sheriff's office, some sixty feet away from the cellblock, the defendant questioned Sweeney concerning the reason why the defendant's attorneys could not be present at the pending grand jury hearing and about the competence of his counsel. Sweeney told the defendant to ask his attorneys concerning procedures before the grand jury. He also told the defendant that he knew the defendant's attorneys, that they were very competent, and that the defendant would be very well advised to follow their advice. At this point, the defendant allegedly volunteered the information that he had not yet told his attorneys that he had killed Hope Rothwell and that he had not yet made up his mind if he would do so. He further stated that he did not think he would ever tell them because of the shame it would bring to his wife and other members of his family, and that he would kill himself before he publicly admitted it. At this point, Sheriff Sweeney told the defendant that his statements relative to the girl should be told to the defendant's attorneys. The entire conversation lasted between five and ten minutes. Throughout it, the sheriff did not ask the defendant any ques-

tions nor make any threats or promises to him nor in any other way attempt to solicit any information from him concerning the charge on which he was being held. The defendant's statements clearly were unsolicited, spontaneous and voluntary.

Our Supreme Court has directed, however, that prior to the admission of those statements the trial court should determine whether the defendant was aware that the warnings given to him by the assistant clerk applied to his conversation with the sheriff at the jail. *State* v. *Darwin,* 161 Conn. 413, 424.[1] With this question in mind, this court requested counsel for the state and the defendant to present it with a stipulation of facts concerning the defendant's educational and personal background. That stipulation shows that the defendant received a trade school diploma from the New Bedford Vocational School in New Bedford, Massachusetts, and a high school equivalency diploma from Hartford Public High School in Hartford, Connecticut. He also took several night courses at Hillyer College for a period of two years. At the time of his arrest, he was forty-five years of age and had been employed at the Pratt and Whitney Aircraft Division of United Aircraft Corporation for approximately twenty-three years. His annual income from his employment, at the time of his arrest, was fairly substantial. He obviously was a man of at least normal intelligence and understanding. Further, on December 11, 1963, just five days prior to his statements to the sheriff, the defendant refused to give more than his name to a psychiatrist employed by the state's attorney, explaining that he had been directed by his counsel not to talk about his case with the psychiatrist. Given this background,

---

[1] *Escobedo* v. *Illinois,* 378 U.S. 478, and *Miranda* v. *Arizona,* 384 U.S. 436, are not applicable to the instant case, except on the issue of voluntariness. See *Darwin* v. *Connecticut,* 391 U.S. 346, 349.

and the response of the defendant to the assistant clerk after she warned him of his rights, this court finds that the defendant knew, as any normal person should have known, that these warnings applied to his December 16, 1963, conversation with the sheriff at the jail. The testimony concerning the defendant's being nervous and upset at the time was clearly related to the unusual and unfamiliar circumstances he found himself in, and not to his mental capacity.

However, as pointed out in *Darwin* v. *Connecticut,* 391 U.S. 346, 351 (opinion concurring in part and dissenting in part), "when the prosecution seeks to use a confession uttered after an earlier one not found to be voluntary, it has . . . the burden of proving not only that the later confession was not itself the product of improper threats or promises or coercive conditions, but also that it was not directly produced by the existence of the earlier confession." In the instant case, the prior illegal confessions took place approximately a week before the defendant's admission to Sheriff Sweeney. Certainly the defendant could not then have been aware that his prior signed confessions would be deemed inadmissible. Therefore, it is incumbent on the state to show that the admission to Sheriff Sweeney was not the result of "the erroneous impression that . . . [the defendant had] nothing to lose . . . [in his] decision to speak a . . . [fourth] time." *Darwin* v. *Connecticut,* supra, 351. The circumstances following the defendant's arrest on the bench warrant and the very content of his statements to Sheriff Sweeney militate against finding that the defendant had such an erroneous impression on December 16. Although he remained confined, he had regular access to the outside world in the form of his counsel, wife, and a clergyman. He was no longer held incommunicado by the state police, as he had been between December 6 and December 8. He was aware that his statements

could be used as evidence against him, as his refusal on December 11, 1963, to give more than his name to a psychiatrist employed by the state indicated. Considering the "totality of the circumstances," there certainly was a break in the stream of events existing between December 8 and 16 from those which had existed from the 6th to the 8th of December. *Clewis* v. *Texas,* 386 U.S. 707, 708. Finally, the very fact that the defendant stated that he would prefer suicide to the shame that a public admission of his guilt would bring to his family indicated that he still felt he had something to lose despite his prior incriminating statements to the state police.

Clearly, the defendant did not feel that the "cat [was totally] out of the bag" at the time he spoke to Sheriff Sweeney. *United States* v. *Bayer,* 331 U.S. 532, 540. This court, therefore, finds that the defendant's admission of December 16 was not the result of the prior inadmissible confessions of December 7 and 8.

The final question presented is whether the defendant's admission of December 16 was improperly obtained because of a deprivation of his right to have counsel present at the time he made his statements to Sheriff Sweeney.

In light of the decisions of the United States Supreme Court in *Massiah* v. *United States,* 377 U.S. 201, 205,[2] *McLeod* v. *Ohio,* 378 U.S. 582 (citing *Massiah* and reversing *State* v. *McLeod,* 173 Ohio St. 520), and *McLeod* v. *Ohio,* 381 U.S. 356 (citing *Mas-*

---

[2] In this case, the United States Supreme Court held that the fifth and sixth amendment rights of the accused were violated by the use of incriminating statements which he made to a codefendant—after their indictment for federal narcotics offenses and their release on bail—in the absence of the accused's retained counsel, which statements were overheard on radio by a government agent without the accused's knowledge that his codefendant had decided to cooperate with the government and had permitted an agent to instal a radio transmitter under the front seat of the codefendant's automobile.

*siah* and reversing *State* v. *McLeod,* 1 Ohio St. 2d 60), our Supreme Court has stated that this defendant clearly had a right to have counsel present when he made a postarrest statement in the nature of an admission. *State* v. *Darwin,* 161 Conn. 413, 426. By its decision in the second *McLeod* case, supra, the United States Supreme Court made the rule laid down in *Massiah* v. *United States,* supra, applicable to statements volunteered by a defendant, without police solicitation, where there were no circumstances of trickery or subterfuge present. In *Hancock* v. *White,* 378 F.2d 479, the rule was applied to voluntary postarrest statements where there was no actual interrogation. In *United States ex rel. O'Connor* v. *New Jersey,* 405 F.2d 632, 636, it was held "that *Massiah* commands an absolute right to counsel after . . . [arrest], thereby vitiating the validity of all oral communications between the defendant and the police made in the absence of counsel."

A like conclusion was reached previously by the New Jersey Supreme Court in *State* v. *Green,* 46 N.J. 192. The second *McLeod* case, supra, also made the *Massiah* rule applicable to all cases in which final appeal was not disposed of by May 18, 1964. *United States ex rel. O'Connor* v. *New Jersey,* supra, 637. In *United States* v. *Crisp,* 435 F.2d 354, the total exclusion rule implied in the *O'Connor* and *Green* cases was somewhat mitigated by a holding that a defendant who was fully warned of his rights orally before making a postindictment statement and who still wished to talk to government agents had waived his right to counsel under the *Massiah* rule, even though the defendant refused to sign a written waiver of his rights. In the instant case, it is admitted that the sheriff did not warn the defendant of his right to have counsel present at the time he made his alleged statements. Our Supreme Court has held that "the defendant *should* have been warned of his rights by

the sheriff before the interview began." *State* v. *Darwin,* 161 Conn. 413, 424. In so holding, it drew a distinction between law enforcement officers whom the defendant spoke to and persons not engaged in law enforcement. Ibid. Apparently the court felt that it was essential for the defendant to realize that he was in possible jeopardy when he volunteered information to a law enforcement officer, including Sheriff Sweeney. It thereby appears to incorporate the rule of *Miranda* v. *Arizona,* 384 U.S. 436, into a determination of whether or not the doctrine enunciated in *Massiah* v. *United States,* supra, has been complied with. Cf. *United States* v. *Crisp,* supra. Additionally, it must be noted that the warning read to the defendant by the assistant clerk advised him of his right to retain counsel but not of his right to have counsel present at the time he made any statements. Both of these factors are relevant in determining whether or not the defendant waived his right to counsel under the *Massiah* rule.

As pointed out in *United States* v. *Crisp,* supra, 356, where, as here, "custodial interrogation proceeds without the presence of defense counsel, the . . . [state] bears a 'heavy burden' of demonstrating that the suspect's constitutional rights have been respected. [*Miranda* v. *Arizona*] 384 U.S. at p. 475 . . . ." "[O]nly a clear, explicit and intelligent waiver may legitimate interrogation without counsel following . . . [arrest]." *United States ex rel. O'Connor* v. *New Jersey,* supra, 636; *State* v. *Darwin,* 161 Conn. 413, 427. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* 304 U.S. 458, 464; *Fay* v. *Noia,* 372 U.S. 391, 439. In the instant case, there is no direct showing by the state that the defendant even knew of his right to have counsel present when he spoke to Sheriff Sweeney. Further, the very content

of the defendant's alleged statements clearly indicates that he did not know, nor did he intend, that such statements as he made to Sheriff Sweeney on December 16, 1963, would come to the attention of the defendant's attorneys, let alone the public. If anything, it showed an attempt to conceal the same from his attorneys and the public. In that respect, it was different from the usual confession or admission made by a criminal defendant. Consequently, the state, which has the burden of proving that the defendant intentionally relinquished or abandoned his right to have counsel present, has failed to do so, and the use of the statements at trial is constitutionally prohibited on the state's case in chief. *Massiah* v. *United States,* supra; *United States ex rel. O'Connor* v. *New Jersey,* supra.

This does not mean, however, that the state may never use the defendant's alleged statements. In *Harris* v. *New York,* 401 U.S. 222, the United States Supreme Court held that statements made by an accused to police under circumstances rendering the statements inadmissible to establish the prosecution's case in chief under *Miranda* v. *Arizona,* 384 U.S. 436, are admissible for purposes of impeaching the defendant's credibility, where (1) such statements are inconsistent with the defendant's trial testimony bearing directly on the crime charged, and (2) the defendant's original statements to the police were not coerced or involuntary. Since the *Massiah* rule anticipated the much broader *Miranda* rule, it follows that a limitation placed on the latter would automatically limit the former. The language in the *Harris* case, supra, 225 n.2, appears particularly appropriate to the instant situation: "If, for example, an accused confessed fully to a homicide and led the police to the body of the victim under circumstances making his confession inadmissible, the petitioner would have us allow that accused to take the stand

and blandly deny every fact disclosed to the police or discovered as a 'fruit' of his confession, free from confrontation with his prior statements and acts. The voluntariness of the confession would, on this thesis, be totally irrelevant. We reject such an extravagant extension of the Constitution."

For the reasons stated, the defendant's motion to suppress the testimony of Sheriff Sweeney as to any statements made by the defendant to him on December 16, 1963, is granted, but only as to the prosecution's case in chief. That testimony may be used, if the state so desires, to impeach the credibility of the defendant, if he elects to testify at the trial in his own behalf.