STATE OF CONNECTICUT *v.* LOUISA MARIANO

KING, C. J.. MURPHY, ALCORN, COMLEY and HOUSE, Js.

Argued June 2—decided July 14, 1964

*Richard S. Weinstein,* with whom was *Jack Waltuch,* for the appellant (defendant).

*John F. McGowan,* assistant state's attorney, with whom, on the brief, were *Otto J. Saur,* state's attorney, and *Joseph T. Gormley, Jr.,* assistant state's attorney, for the appellee (state).

HOUSE, J.  The defendant was found guilty by a jury of one count of policy playing on December 16, 1961, in violation of § 53-298 of the General Statutes. She was acquitted on five other counts alleging the same offense on prior days.  She was arrested, shortly after noon on December 16, when a raiding party of state police officers, who were in possession of a search warrant and were accompanied by a Wilton constable, gained entrance to her home and

seized papers representing bets made on that day. On March 1, 1962, prior to the trial, the defendant filed a motion that the court suppress the evidence obtained in the raid and order its return to the defendant on the ground of illegal search and seizure. After a full hearing and consideration of the written brief filed by the defendant, the court found that the motion to suppress was without merit, that the officers did have a valid search warrant and that the search and the seizure were not illegal or unreasonable. The motion to suppress was denied. Prior to her arraignment on May 17, 1962, the defendant moved to argue orally the motion to suppress which had been denied. This motion was denied, as were subsequent motions for disclosure, for a bill of particulars, to quash the "search or arrest" warrants and to strike and expunge. Also, two demurrers to the information were overruled. Then the trial proceeded. During the trial, the defendant sought, unsuccessfully, to exclude the evidence seized in the raid and again attempted to establish that it was procured by an illegal search and seizure, but the court refused to permit further inquiry into the circumstances surrounding the issuance and execution of the search warrant on the ground that the issue of the alleged illegal search and seizure had already been determined on the defendant's motion to suppress evidence. On this appeal, therefore, there were two findings, one on the issues raised to the court on the motion to suppress and the other on the issues raised by certain of the subsequent motions and on the trial to the jury. The defendant is not entitled to any significant correction in either finding.

The defendant's appeal raises two principal

issues: (1) Was the defendant deprived of a fair opportunity to raise the issue of the legality of the search and seizure? (2) Was the execution of the warrant for the search and seizure legal?

I

The defendant raised the issue of the legality of the search by a motion to suppress which was filed and heard in advance of the trial. In this motion, the defendant expressly alleged that she was arrested without a valid search warrant and in violation of her rights under the fourth amendment to the federal constitution and under article first, § 8, of the Connecticut constitution. The motion further claimed: "The arresting authorities broke in and entered the premises occupied by the defendant illegally and improperly and in violation of the defendant's rights as aforesaid." By way of relief, the defendant requested an order of the court to suppress evidence of "any article, object or thing, visual observation or statement obtained and secured illegally and improperly as aforesaid" and "any testimony relating to or arising therefrom against her." The federal and state constitutional provisions recited in the defendant's motion are substantially similar. Both prohibit unreasonable searches and seizures and the issuance of search warrants unless they are based on probable cause, are supported by oath and contain a reasonable description of the place to be searched and the things to be seized. The constitutionality of the search and seizure was thus clearly raised by the defendant for adjudication by the court.

Parenthetically, we note that at the time of the hearing on the defendant's motion there was no provision in our practice for a motion to suppress.

See *State* v. *Magnano,* 97 Conn. 543, 547, 117 A. 550; *State* v. *Reynolds,* 101 Conn. 224, 235, 125 A. 636; *State* v. *Carol,* 120 Conn. 573, 574, 181 A. 714. Prior to the decision in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, an unreasonable search and seizure did not affect the admissibility of evidence in a state court. The *Mapp* decision abrogated our prior law that relevant evidence, although obtained by unreasonable search and seizure in violation of the federal constitution, was admissible in evidence in our state courts. *State* v. *Fahy,* 149 Conn. 577, 582, 183 A.2d 256, rev'd, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171; *State* v. *Collins,* 150 Conn. 488, 489, 191 A.2d 253. As a consequence of that decision, our General Statutes now expressly provide for a motion to suppress. § 54-33f (effective July 2, 1963). It is unnecessary to decide whether a motion to suppress was permissible under our practice at the time of the hearing. The state made no objection to the defendant's election to proceed by such a motion, which is analogous to the federal practice under Rule 41 (e) of the Federal Rules of Criminal Procedure. The trial court was justified in exercising its broad discretion to determine the order in which the issues should be tried and in hearing and deciding the case on the theory on which it was tried. *Barber* v. *Baldwin,* 135 Conn. 558, 565, 67 A.2d 1; *Housing Authority* v. *Pezenik,* 137 Conn. 442, 448, 78 A.2d 546; *Nearing* v. *Bridgeport,* 137 Conn. 205, 206, 75 A.2d 505; Maltbie, Conn. App. Proc. § 41.

The defendant had a full hearing on her motion to suppress, lasting an entire day, during which seven witnesses were examined, ninety-three pages of transcript taken and the search warrant admitted as an exhibit. Counsel for the defendant called to

the witness stand the defendant, her two daughters and two of the officers who participated in the raid. There is no justification whatsoever for the assertion by the defendant that she was limited or foreclosed in any effort to prove the allegations of her motion to suppress. Such a claim is not only inaccurate but untrue, as the record of the entire proceedings on the motion to suppress discloses. The only claim advanced by the defendant which might conceivably support such an assertion is the exclusion by the court of one question addressed to one of the officers on cross-examination on the issue of probable cause for the issuance of the search warrant. The defendant sought to cross-examine the officer as to whether prior to the raid he had determined the number of entrances and exits to the defendant's house. It can hardly be validly asserted that the exclusion of this one irrelevant inquiry foreclosed the defendant from proof of her allegations of illegality. She had the burden of proving these allegations; *Batten* v. *United States,* 188 F.2d 75, 77 (5th Cir.); *Irby* v. *United States,* 314 F.2d 251, 253 (D.C. Cir.); 1 Wharton, Criminal Evidence (12th Ed.) § 130; 2 Wharton, op. cit., p. 714; 47 Am. Jur. 521, Searches and Seizures, § 31; 79 C.J.S. 917, Searches and Seizures, § 98; and the court found that she did not sustain this burden.

Where a matter has already been put in issue, heard and ruled on pursuant to a motion to suppress, the court on the subsequent trial, although not conclusively bound by the prior ruling, may, if it is of the opinion that the issue was correctly decided, properly treat it as the law of the case, in the absence of some new or overriding circumstance. *United States* v. *Klapholz,* 230 F.2d 494, 498 (2d Cir.); *United States* v. *Jennings,* 19 F.R.D. 311, 312

(D.D.C.), aff'd, 247 F.2d 784 (D.C. Cir.); *Waldron* v. *United States,* 95 App. D.C. 66, 70, 219 F.2d 37 (D.C. Cir.); *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 479, 138 A. 483. It is to be noted that there was no claim whatsoever advanced at the trial by the defendant either that she was taken by surprise at the offer of the seized evidence or that she was prepared to offer any new evidence not previously available by the exercise of proper diligence at the hearing on her motion to suppress. There were no such circumstances as prevailed in *Gouled* v. *United States,* 255 U.S. 298, 312, 41 S. Ct. 261, 65 L. Ed. 647. Although we have no precedent in our practice with respect to the use of motions to suppress, the principle we have applied is consistent with our general practice that "[p]arties cannot be permitted to waste the time of courts by the repetition in new pleadings of claims which have been set up on the record and overruled at an earlier stage of the proceedings." *Hillyer* v. *Winsted,* 77 Conn. 304, 306, 59 A. 40; see *Wiggin* v. *Federal Stock & Grain Co.,* 77 Conn. 507, 516, 59 A. 607. Under the circumstances, the court on the trial was not in error in accepting the ruling on the motion to suppress as the law of the case and in following the decision of the judge who heard and decided the issues of the alleged illegal search and seizure.

## II

The defendant's second principal claim is that the search pursuant to the search warrant was conducted in an unreasonable manner contrary to the prohibitions of article first, § 8, of the Connecticut constitution and the fourth amendment to the federal constitution. By extending the exclusionary evidence rule to the states in *Mapp* v. *Ohio,* 367 U.S.

643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, the Supreme Court in no way attempted to define what standard of reasonableness was applicable to test the validity of a search and seizure. In *Ker* v. *California*, 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726, however, the court said: "This Court's long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application is carried forward when that Amendment's proscriptions are enforced against the States through the Fourteenth Amendment. And, although the standard of reasonableness is the same under the Fourth and Fourteenth Amendments, the demands of our federal system compel us to distinguish between evidence held inadmissible because of our supervisory powers over federal courts and that held inadmissible because prohibited by the United States Constitution. We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. As we have stated above and in other cases involving federal constitutional rights, findings of state courts are by no means insulated against examination here. . . . [Citations omitted.] While this Court does not sit as in *nisi prius* to appraise contradictory factual questions, it will, where necessary to the determination of constitutional rights, make an independent examination of the facts, findings, and the record so that it can determine for itself whether in the

decision as to reasonableness the fundamental—*i.e.,* constitutional—criteria established by this Court have been respected. The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain."

From early colonial times we, in this jurisdiction, have followed the common-law requirement in the execution of search warrants that, in the absence of some special exigency, before an officer may break and enter he "ought to signify the cause of his coming, and to make request to open the doors." *Semayne's Case,* 5 Co. Rep. 91, back of 91, 77 Eng. Rep. 194; *Read* v. *Case,* 4 Conn. 166. This requirement is in accordance with the rule in most jurisdictions. For an excellent discussion, see Blakey, "The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California," 112 U. Pa. L. Rev. 499. In an appendix to that article (pp. 560, 561), there is a detailed analysis of the federal statute and twenty-nine state statutes authorizing forcible entry in the execution of search warrants. The author notes that almost invariably the statutes condition the right to break and enter upon due notice. The length of time an officer must wait before breaking in after an announcement must be reasonable in the light of the circumstances in the particular case. *United States* v. *Rabinowitz,* 339 U.S. 56, 63, 70 S. Ct. 430, 94 L. Ed. 653; see *Pickett* v. *Marcucci's Liquors,* 112 Conn. 169, 173,

151 A. 526; *State* v. *Reynolds,* 101 Conn. 224, 231, 125 A. 636. Recognized circumstances justifying prompt entry after announcement include those where the persons within already know of the officer's authority and purpose, where the officers are justified in the belief that the persons within are in imminent peril of bodily harm or where those within are then engaged in some activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted. *Ker* v. *California,* supra, 47.

We do not find that the United States Supreme Court has enunciated any other or different rule from the one established in this state. See *Ker* v. *California,* supra, 40; *Miller* v. *United States,* 357 U.S. 301, 309, 78 S. Ct. 1190, 2 L. Ed. 2d 1332. Our rule is consistent with the rule followed in the federal courts under 18 U.S.C. § 3109, which is the federal statute of general application governing the execution of search warrants. See *United States* v. *Freeman,* 144 F. Sup. 669 (D.D.C.); *United States* v. *Price,* 149 F. Sup. 707 (D.C. Cir.); *United States* v. *Lewis,* 171 F. Sup. 71 (D.D.C.); *Sykes* v. *United States,* 312 F.2d 232 (8th Cir.); *United States* v. *Purgitt,* 176 F. Sup. 557 (D.C. Cir.); *Jones* v. *United States,* 304 F.2d 381 (D.C. Cir.); *United States* v. *Viale,* 312 F.2d 595 (2d Cir.); *United States ex rel. Turco* v. *Dross,* 224 F. Sup. 142 (S.D.N.Y.); see also *Masiello* v. *United States,* 317 F.2d 121 (D.C. Cir.), which expressly held that admittance of the officer need not have been affirmatively refused before he could break in where he had knocked and after ten to thirty seconds had knocked again, had made an announcement and had then heard a rustling sound.

We now turn to a specific analysis of the facts in

the present case to determine the merits of the defendant's attack on the court's conclusions that the search and the seizure were not illegal or unreasonable or in violation of the defendant's constitutional rights. On December 16, 1961, at approximately 12:45 p.m., seven state police officers and a Wilton town constable arrived at the defendant's residence in Wilton. The dwelling is a single-family house with multiple levels. As one enters through the front door, there is a hallway which leads to a living room at the further end of the hallway. On the left of the hallway is a partition which does not reach the ceiling and over which an adult can look to the left into a recreation room on a lower level. On the right of the hallway is a door which leads to the kitchen. About opposite the doorway to the kitchen and at the end of the low partition, there are two sets of stairs of five steps each, one leading down to the recreation room and one leading up to a study or den on a higher level. There is a bathroom off the study or den, and there are also bedrooms on that level. There is a garage attached to the dwelling which is located at the extreme right at the front of the house. The police officers arrived at the defendant's house in a red truck, except for a policewoman, who arrived in her own private automobile. Edward F. Collins, a state police officer, had the search warrant in his possession, and he proceeded to the front door with Louis R. Stefanek, a state police sergeant, who was in uniform.

The search warrant was issued by a judge of the Circuit Court upon the sworn complaint of an assistant prosecuting attorney of that court and was addressed to several enumerated officials, including "any state policeman." It identified the premises as those of the defendant on Spoonwood Lane in

Wilton and the articles sought, inter alia, as tickets, slips, papers, tokens, lottery tickets and records "kept for purposes of gambling and gaming." Robert Rasmussen, a state police officer, and Benjamin Tanner, the Wilton constable, were stationed at the garage door. William Quaintance and Vincent Brennan, state police officers, were stationed at a door at the side rear. John Wargo, a state police officer, was stationed at a rear door. Collins knocked loudly at least twice on the front door and announced in a loud voice: "I am a State Police Officer with a search warrant. Open the door." Following this announcement, Collins heard sounds of footsteps inside the house going away from the front door and to the right. This testimony as to footsteps is corroborated by the defendant's daughter Patricia, who testified that she started to walk toward the front door after she saw the red truck enter the driveway. At this point, Collins mentioned the footsteps to Stefanek, who gave a signal to Collins to break in the door, which he did with a sledgehammer and thereupon entered. Upon hearing the door being thus broken down, Rasmussen and Tanner raised the garage door and went through the garage and kitchen into the front hallway. (The fact that these officers did not have a warrant is without significance because those who did have the warrant initiated the break. See *United States* v. *Lewis,* 171 F. Sup. 71, 72 [D.D.C.]). Rasmussen ran up the five steps to the den, where he saw the defendant picking up papers from a desk and starting to run with them to the bathroom. He immediately overtook her and held her at the entrance to the bathroom while Stefanek took the papers from her. These papers contained recorded numbers bets. It is significant that the search war-

rant authorized a search for gambling papers, which are subject to easy destruction, and that, after knocking, the officer heard footsteps going away from the front door. In the light of all the facts found by the trial court, there was no error in its conclusion that the search and the seizure were not illegal or unreasonable or in violation of the defendant's constitutional rights.

### III

The defendant has made, in all, thirty-five assignments of error. Most of them relate to her claims of illegal search and seizure and her unsuccessful efforts during the jury trial to retry the issue of the validity of the search warrant. These claims have already been considered. Many of the other assignments have been expressly abandoned or have not been pursued in the defendant's brief and are therefore treated as having been abandoned. *Fleischer* v. *Kregelstein,* 150 Conn. 158, 159, 187 A.2d 241; *Domenick* v. *Wilbert Burial Vault Co.,* 149 Conn. 381, 382, 180 A.2d 290; Maltbie, Conn. App. Proc. §§ 167, 327.

There was no error in the rulings of the trial court denying the defendant's motion to reargue her motion to suppress and denying her motion for oral argument on the motion to suppress. The motion for oral argument was not seasonably filed since it was not filed until one week after the judge who had heard the evidence on the issue had already decided the motion on the basis of that evidence and the written briefs and had filed his memorandum of decision. It was well within the court's discretion to deny both motions.

There was no error in the discretionary ruling of the court admitting into evidence a chart pre-

pared by the witness Rasmussen to illustrate his testimony regarding the relation of the various numbers found on the seized papers to results at a Florida racetrack. Evidence of this character may be received if, in the opinion of the trial court, it will assist the jury in understanding an expert's testimony. *Gillette* v. *Schroeder,* 133 Conn. 682, 684, 54 A.2d 498; *Cavallaro* v. *Welch,* 138 Conn. 331, 334, 84 A.2d 279; see *State* v. *Johnson,* 140 Conn. 560, 563, 192 A.2d 359; *State* v. *Genova,* 141 Conn. 565, 570, 107 A.2d 837. The court properly informed the jury that the exhibit was offered not for the purpose of proving the facts set forth in the exhibit but only to explain the officer's testimony in connection with the policy slips already in evidence.

We have reviewed the defendant's claims of error in the court's charge to the jury and with one exception find the portions attacked "correct in law, adapted to the issues and sufficient for the guidance of the jury." *Smith* v. *New Haven,* 144 Conn. 126, 129, 127 A.2d 829. The court properly instructed the jury that they must consider as legal evidence in the case the policy slips and other material obtained in the raid and admitted in evidence. This instruction was a correct statement of law, the question of the admissibility of evidence obtained by a search and seizure being a matter for the court to decide. *State* v. *Hanna,* 150 Conn. 457, 469, 191 A.2d 124; *Robinson* v. *Ferry,* 11 Conn. 460, 463. In unnecessarily summarizing for the jury the reasons why the evidence was admissible, the court did inform the jury that it was not necessary for the officers with the search warrant to knock before entering. Since the officer did in fact knock, it was unnecessary for the court to consider whether the

circumstances of the case brought it within any exception which would make an entry reasonable without knocking. In any event, the statement was harmless because the reason why the evidence was admitted did not concern the jury, and they were properly instructed that they should consider it. It is only prejudicial error which justifies the direction of a new trial. *State* v. *Williamson,* 134 Conn. 203, 204, 56 A.2d 460. "An inadvertently inaccurate statement extracted from a charge by a process of critical dissection will not be regarded as reversible error unless it is reasonably probable that the jury would have been misled by it." *McMahon* v. *Bryant Electric Co.,* 121 Conn. 397, 406, 185 A. 181; *Allard* v. *Hartford,* 151 Conn. 284, 292, 197 A.2d 69.

The defendant also claims error in the denial of her motion to set aside the verdict. The ruling on a motion to set aside the verdict is reviewed on the evidence rather than on the finding. *State* v. *Keating,* 151 Conn. 592, 595, 200 A.2d 724; *State* v. *Devine,* 149 Conn. 640, 654, 183 A.2d 612. Although in her brief the defendant appears to limit her contention on the denial of this motion to claimed error relating to the reasonableness of the search, we have, nevertheless, examined all the evidence as submitted in the appendices to the briefs pursuant to § 715 of the Practice Book and have made the full investigation suggested in *Ker* v. *California,* 374 U.S. 23, 34, 83 S. Ct. 1623, 10 L. Ed. 2d 726. There was ample evidence to prove the guilt of the defendant as charged. The court did not err in denying the motion to set aside the verdict.

The other assignments of error are not of sufficient consequence to require discussion. In none,

under the facts in the findings, do we find harmful error.

There is no error.

In this opinion the other judges concurred.