STATE OF CONNECTICUT *v.* ANONYMOUS (1977–5)*

APPELLATE SESSION OF THE SUPERIOR COURT

* Thus entitled, in view of General Statutes § 54-90.

DAVID M. SHEA, J. After a trial by the jury, the defendant was found guilty of interfering with a police officer in violation of General Statutes § 53a-167a (Rev. to 1975).[1] The defendant has appealed on the ground that the evidence was insufficient to support the verdict of the jury, and she also claims certain errors in the charge.

From the evidence which the state presented at the trial the jury could reasonably have found the following facts: At about 9 o'clock one morning a police officer was sent to the home of a woman who had called the police to complain of an assault. There the officer observed several cuts on the face

---

[1] "[General Statutes] Sec. 53a-167a. INTERFERING WITH AN OFFICER: CLASS D FELONY. (a) A person is guilty of interfering with an officer when he obstructs, resists, hinders, endangers or interferes with any peace officer or fireman in the performance of his duties."

of the complainant, including a large cut near her mouth, a cut on her left arm which had been sutured and bloodstains on her clothes. It appeared to the officer that these wounds had been made by some kind of weapon and he learned that the assault had occurred at 2 or 3 o'clock that morning. Accompanied by the complainant and another police officer who had been assigned to assist him, the officer went to the home of the suspected assailant. When they could not find the suspect at her residence, they went to the apartment of the defendant. The two officers were in uniform. The complainant knocked at the door of the apartment. The defendant opened the door to an angle of about forty-five degrees. One of the officers was able to look into the apartment and he saw a woman sitting on the couch, and also some children. The complainant asked whether the suspect was there and one of the officers repeated the question. The defendant responded "No." At that point the woman sitting on the couch got up very quickly and ran toward the rear of the apartment. The complainant then said, "There goes the one that cut me." One of the officers then shouted, "Hold it right there," and he attempted to enter the apartment. The defendant stated, "You can't enter. You haven't got a warrant," and she attempted to close the door on him, pinning him against the door frame. With the assistance of the other officer he was able to push the door open, free himself and proceed to a bedroom at the rear of the apartment where he found the suspect and arrested her. The defendant was arrested later.

It was conceded at the trial that no warrant for the arrest of the suspect or for the search of the defendant's apartment had been obtained. There also was no testimony to indicate directly that the defendant knew that the suspect had committed any crime. The defendant admitted that she had falsely

responded to the inquiry about the presence of the suspect, however, and one officer testified that it was after seeing her go to the rear of the apartment that the defendant asserted the lack of a warrant as a reason for opposing their entry.

In reciting the facts we have not discussed the defendant's version, because the jury need not have credited it. In deciding whether there is sufficient evidence to support a verdict we must view the evidence in the light most favorable to sustaining the verdict. *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 555.

Our ultimate decision in this case is to grant a new trial because of error in the charge. We must, nevertheless, discuss other claims raised by the defendant which may arise upon a new trial or which would be the basis for an acquittal at this stage of the proceeding.

It is clear that the evidence would adequately support the finding of the jury that the defendant was guilty of interfering with a police officer in the performance of his duties, in violation of General Statutes § 53a-167a, unless the entry of the officers into the home of the defendant was illegal. *State* v. *Cesero,* 146 Conn. 375, 379. The defendant claims that the entry of the police into her home was illegal (1) because the officers failed to announce the purpose of their coming and to make a request to enter before using force and (2) because the entry was made without a warrant.

## I

"From early colonial times we, in this jurisdiction, have followed the common-law requirement in the execution of search warrants that, in the absence of some special exigency, before an officer may break and enter he 'ought to signify the cause of his

coming, and to make request to open the doors.' *Semayne's Case,* 5 Co. Rep. 91, back of 91, 77 Eng. Rep. 194; *Read* v. *Case,* 4 Conn. 166." *State* v. *Mariano,* 152 Conn. 85, 94. "The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application." *Miller* v. *United States,* 357 U.S. 301, 313. Entry without prior announcement does not render a search unreasonable under the fourth amendment, however, nor is compliance with the rule mandated by any other provision of the federal constitution. *Ker* v. *California,* 374 U.S. 23, 37-41 (Clark, J.).

The issue before us is whether the failure of the officers to comply with the rule may be excused under the circumstances involved. The defendant claims that the requirement of notice and demand before entry may not be disregarded under any conditions. She relies upon *Miller* v. *United States,* supra, 309, in which a federal statute, 18 U.S.C. § 3109,[2] conceded to control the validity of the arrest, was construed to require an "express announcement by the officers of their purpose for demanding admission." Whether the statute, 18 U.S.C. § 3109, would admit of an exception justifying noncompliance with the requirement in exigent circumstances was not decided in that case. *Miller* v. *United States,* supra, 309; *Ker* v. *California,* supra, 40. The defendant also relies upon a statement in *State* v. *Mariano,* supra, 95, in which the issue considered was the period of time after demand which must elapse before the police may force entry, as follows: "Recognized circumstances justifying prompt entry

[2] Title 18 U.S.C. § 3109 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

*after announcement* include those where the persons within already know of the officer's authority and purpose, where the officers are justified in the belief that the persons within are in imminent peril of bodily harm or where those within are then engaged in some activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." (Emphasis added.) We are not persuaded that it was intended by this statement to establish prior notice and demand as an invariable prerequisite to forcible entry in the situations described, at least where such action by the police would increase the peril or defeat the objective. Such an inflexible position was rejected in the case of *Read* v. *Case,* 4 Conn. 166, cited with approval in *State* v. *Mariano,* 152 Conn. 85, 94, where the failure to demand entry was excused under necessitous circumstances involving the safety of a victim.

There are differences among the authorities as to the circumstances which may be deemed sufficiently exigent to justify the absence of a demand before forcible entry. One viewpoint is that "only when, as one element, the facts surrounding the particular entry support a finding that those within actually knew or must have known of the officer's presence and purpose to seek admission" can noncompliance with the rule be excused. *Ker* v. *California,* 374 U.S. 23, 54 *(Brennan, J.).* Another approach, sanctioned as not violative of federal constitutional standards, has been that no demand is required in any situation where prior announcement would increase the danger to the officer or frustrate his purpose. *Ker* v. *California,* supra, 39–40 *(Clark, J.); People* v. *Maddox,* 46 Cal. 2d 301, 306. A slightly broader expression of the latter position is that the officer may dispense with the requirement "[i]f for any reason an explanation of his errand and demand for admittance . . . are or

reasonably appear to him to be impracticable, as where such explanation and demand would tend to frustrate or to make much more dangerous to life or limb the arrest or other apprehension." Restatement (Second), Torts § 206, comment d. Increased danger of bodily harm to the officer or another, hot pursuit of an escaping felon, and a reasonable belief that the delay attendant upon making the announcement or demand will result in an attempt to escape or to destroy evidence are circumstances which have been found to justify intrusion without prior notice. *Ker* v. *California,* supra, 40; *Miller* v. *United States,* 357 U.S. 301, 309; *People* v. *Maddox,* supra, 306; *People* v. *Ruiz,* 146 Cal. App. 2d 630, 634.

In this case the testimony that, after the defendant denied that the suspect was in the apartment, the woman seated on the couch got up very quickly and ran toward the rear, and that she was then identified by the complainant as the assailant would have justified a reasonable belief on the part of the officers that the accused woman was attempting to escape through another door of the apartment.[3] They could also have concluded reasonably that immediate action was essential to apprehend her. Under those circumstances[4] forcible entry by the

[3] Both officers testified that they believed that there were two entries to the apartment but that they did not "check it out." Neither the defendant nor her witnesses testified about the number of entries. We are concerned here only with the question of whether the belief on the part of the officers that an escape was being attempted was genuine and reasonable. The jury may have properly concluded that it was despite the fact that the suspect was actually found in a back bedroom of the apartment.

[4] In *Miller* v. *United States,* 357 U.S. 301, 311–12, evidence that the petitioner, after opening his apartment door in response to a knock, attempted to close it after observing two officers not in uniform standing in the hallway was found to be insufficient to support an inference that the petitioner already knew of the officers' purpose so that they were justified in assuming that demand before entry would be a useless gesture. In the present case the fact that the officers were in uniform and that the defendant had falsely denied

officers without prior announcement of purpose and demand was not illegal, and the jury might reasonably have concluded that the defendant's conduct in resisting their entry could not be justified on that ground.

## II

The defendant claims that the failure of the police to obtain an arrest warrant for the suspect rendered their forcible entry illegal. She has standing to raise this issue because the intrusion into her home cannot be justified unless it was for the purpose of making a valid arrest, as explained in part IV of this opinion.

At common law a police officer may arrest a person without a warrant when he has reasonable cause to believe that the person to be arrested has committed a felony. *Johnson* v. *United States,* 333 U.S. 10, 15; 5 Am. Jur. 2d, Arrest, § 25. General Statutes § 6-49 authorizes police officers to arrest, "without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act or on the speedy information of others . . . ." This portion of the statute was construed to impose the "speedy information" condition in arrests for felonies as well as misdemeanors, in derogation of the common-law rule that information forming the basis of a felony arrest need not have been received soon after the commission of the crime. *State* v. *Carroll,* 131 Conn. 224, 228; *Sims* v. *Smith,* 115 Conn. 279, 282–83. In 1945, following the decision in *State* v. *Carroll,* the statute was amended by adding a provision allowing an officer to arrest "without previous complaint and warrant, any person whom such

the presence of the person sought lends greater support to such an inference. Nevertheless, we do not assume that demand and announcement of purpose would have been wholly superfluous.

officer has reasonable grounds to believe has committed or is committing a felony." Public Acts 1945, No. 294. The amendment is declaratory of the common-law rule governing felony arrests. *Martyn v. Donlin,* 151 Conn. 402, 409. We are not concerned, therefore, with one of the points discussed in the briefs, whether or not the officers were acting upon "speedy information" in view of the lapse of time between the occurrence of the assault and the arrest of the suspect, since the basis for the arrest was probable cause to believe that she had committed a felony rather than a misdemeanor, as discussed later.

Most of the early English authorities took the view that in the absence of necessitous circumstances, without a warrant an officer could not upon probable cause break the doors of a dwelling in order to arrest an occupant for having committed a felony. Foster, Crown Law, p. 321 (2d Ed., 1776); 2 Hawk, Pleas of the Crown, c. 14, p. 183 (7th Ed., 1795); Coke, Fourth Institutes, p. 177; cf. 2 Hale, Pleas of the Crown, pp. 90-92 (1st Am. Ed., 1847). The majority view in this country has been that an officer may forcibly enter a house in order to arrest a person who he reasonably believes has committed a felony. *Commonwealth* v. *Phelps,* 209 Mass. 396; annot., 5 A.L.R. 263; 5 Am. Jur. 2d, Arrest, § 89; Wilgus, "Arrest Without a Warrant," 22 Mich. L. Rev. 541, 798, 803. There is a growing trend away from this position, however, on the ground that a person should have a greater right of privacy in his own home than on the public street. *Dorman* v. *United States,* 435 F.2d 385, 389–91 (D.C. Cir.); *Accarino* v. *United States,* 179 F.2d 456, 464 (D.C. Cir.). There have been several intimations in cases involving seizures of property incidental to arrests that, absent exigent circumstances, the warrantless entry of a home in order

to arrest an occupant would present a "grave constitutional question." *Coolidge* v. *New Hampshire,* 403 U.S. 443, 479–80, 511 n.1 (opinion of White, J., concurring and dissenting); *Jones* v. *United States,* 357 U.S. 493, 499–500.

Where the rule is followed that a warrantless entry into a dwelling may not be made for the purpose of making an arrest for a felony, an exception for "exigent circumstances" is recognized. *Accarino* v. *United States,* supra, 464. Some of the factors which have been considered pertinent to the application of this exception are whether the offense involved serious violence; whether the suspect may be armed; whether there is a clear showing of probable cause, beyond the minimum necessary to obtain a warrant; whether there is strong reason to believe the suspect is within the premises; whether there is a likelihood that the suspect will escape if not swiftly apprehended; and whether the entry is made at a reasonable hour. *Dorman* v. *United States,* supra, 392–93. Those considerations are to be balanced against the delay which would have been entailed in obtaining a warrant before deciding the ultimate issue of whether the failure to obtain a warrant was unreasonable. Id., 394.

The information received from the victim concerning the assault, together with the observation of the cuts on her face and arm, which appeared to have been made by a weapon,[5] may have been sufficient to establish probable cause for an arrest of the suspect on a charge of assault in the second degree, a class D felony, in violation of General

---

[5] The evidence does not indicate that the victim mentioned any weapon. The trial court excluded the details of the victim's account of the assault upon objection by the defendant. The evidence was clearly admissible as an exception to the hearsay rule. 6 Wigmore, Evidence (3d Ed.) § 1789.

Statutes § 53a-60.[6] It was not such a clear situation, however, that further investigation before obtaining a warrant was superfluous. There is no principle of law which requires that application for a warrant be made as soon as the police have acquired the bare minimum of information necessary for that purpose. The evidence does not establish that the officers had formulated any definite intention of arresting the suspect at the time they approached the defendant's apartment. There was testimony that the officers had brought the victim with them in order to have her identify her claimed assailant in accordance with normal police investigation procedure. The jury might well have concluded that the officers intended to arrange a confrontation between the victim and the accused before making any arrest. Whether the suspect's version of the fracas, if she had chosen to give it, would have refuted or confirmed the complaint against her, we cannot condemn a police procedure which afforded an opportunity to present the suspect's viewpoint before setting in motion the complicated legal machinery which follows an arrest. With the benefit of hindsight, the defendant argues that one of the officers should have been positioned at the rear exit of the apartment in order to prevent a possible escape. We find nothing reprehensible in such a lack of clairvoyance, especially since there was no assurance that the suspect would be found at the apartment and since there was little reason to anticipate that she would attempt to flee or that the defendant would object to her apprehension.

---

[6] Section 53a-60 provides, in pertinent part, that: "(a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

Since the officers had done nothing unreasonable before arriving at the door of the defendant's apartment, her claim of illegal conduct on their part must be based upon what transpired afterward. It can hardly be suggested that once the victim identified the suspect as her assailant the officers could not pursue her as she was fleeing in the manner which appeared to be most effective and direct. See *Johnson* v. *United States,* 333 U.S. 10, 15. They were not bound to adopt the doubtful course of running down the front stairs and around the building in order to capture the fugitive as she emerged from the rear exit. So far as the defendant is concerned, once there was probable cause to arrest the suspect, no different principle should apply than if the officers in the hallway in the legal exercise of their duty had observed contraband "in plain view" within the apartment. In such a situation it is well established that entry may be made without a warrant, especially if there is any likelihood that the item to be seized may disappear before a search warrant can be obtained. See *Harris* v. *United States,* 390 U.S. 234, 236; *State* v. *Krause,* 163 Conn. 76, 82. The defendant had no greater right to oppose the entry of the police because the object of their seizure was her friend rather than her property.

We conclude that even if we were to follow the view that a warrant must be obtained before forcibly entering a dwelling in order to make an arrest, the circumstances of this case would fall within the "exigent circumstances" exception to that rule. *Dorman* v. *United States,* 435 F.2d 385, 392 (D.C. Cir.). It was a serious offense involving violence. Probable cause was clear. The suspect was seen within the apartment and was attempting to flee. Any delay in her apprehension increased the likelihood of escape or the possibility that she might

obtain a weapon. Although it may have been possible to obtain an arrest warrant before going to the apartment, the officers were exercising a reasonable discretion in pursuing their investigation further. Under all the circumstances the jury could reasonably have found that their forcible entry was not an intrusion which the defendant was entitled to resist.

## III

The first claim of error in the charge to the jury is that the trial court failed to instruct the jury that unless the defendant intended to interfere with the officers in the performance of their duties she would not be guilty of the charge. The statute, General Statutes § 53a-167a, provides that the crime is committed when a person "obstructs, resists, hinders, endangers or interferes with any peace officer . . . in the performance of his duties." There are some statutes under which it is held that, notwithstanding the ignorance of the accused concerning some of the facts essential to the crime, the mere performance of a prohibited act may constitute an offense, a result which is rationalized on the ground that it may be impracticable to prove knowledge or that the actor should assume the risk of failing to ascertain the facts. *State* v. *Gaetano,* 96 Conn. 306, 316. "Whether 'knowingly' is or is not to be implied in the definition of a statutory crime, where it is not expressed, must be determined from the general scope of the Act, and from the nature of the evils to be avoided." Ibid. We can perceive no frustration of the legislative objective in construing the interference statute to apply only to actions which are intended to interfere with the performance of an officer's duty and to exclude any accidental or inadvertent interference. We are not dealing with regulatory or social legislation where the special relationship of the actor to the subject matter justi-

fies a presumption of knowledge or where enforcement would be seriously hampered by imposing such a requirement. *State* v. *Guerra,* 151 Conn. 159, 165; *State* v. *Gaetano,* supra, 316; *Barnes* v. *State,* 19 Conn. 398, 404–405. The idea that some culpable mental element is ordinarily requisite for a crime is deeply engrained in our legal system and claimed exceptions require careful scrutiny and rational justification. *Morissette* v. *United States,* 342 U.S. 246, 250–63.

The trial court did not adopt the position that intentional interference with an officer is not an element of the crime charged. The jury were instructed that "in determining whether or not there is an obstruction or resistence, a hindering or interfering or even an endangering there must be some knowledge on the part of the defendant . . . . So the first point you must determine in connection with this is whether or not the circumstances warrant some knowledge on the part of the defendant in knowing wherefor the officer has a duty or is exercising his duties." The court, in its charge, summarized the testimony of the defendant and her corroborating witness to the effect that she did not see the officers when she denied to the complainant that the suspect was in the apartment, and to the effect that, when the officers did come to the door, she partially closed it only to remove the door chain lock and not to obstruct the entry of the police. The jury were instructed that if they believed that testimony, "then, of course, . . . [the defendant] would not have knowledge and certainly was in the act not of obstructing or hindering but of unlatching the door so that she could talk to the officers." In recapitulating, the court stated that one element of the offense which the state must have proved was that, while the officer was engaged in the performance of his duty to make an arrest, the defendant

"obstructed, resisted, hindered, endangered or interfered with him, that is, that the door was purposely closed on him to prevent, to hinder, to obstruct, to resist his attempts to make or follow his duty to make such an arrest, with the knowledge that he had or was in the performance of his duties." The defendant had filed no request to charge upon the subject of intent. In stating her exception the defendant seems to have assumed that the charge had completely failed to cover the subject of intent. Her only specific exception was that the jury had to find "that the defendant intentionally interfered and intentionally attempted to prevent a lawful arrest," because of her claim that she was in the process of removing the door chain when the officers burst into the room. We can perceive no essential difference between that requested further instruction and the charge, as given, that the state must prove that "the door was purposely closed on him . . . to resist his attempts to . . . follow his duty to make such an arrest, with the knowledge that he . . . was in the performance of his duties." Accordingly we reject the claim of error with respect to this portion of the charge.

## IV

The defendant also claims error in the failure of the court to instruct the jury that the defendant had a right to resist an illegal entry into her apartment. The court stated that the request was denied because the defendant had testified, not that she was resisting an illegal entry by the officers, but that she was in the process of admitting them to her apartment when they burst in. We cannot accept that explanation for refusing the defendant's request because the legality of the entry was necessarily involved as an issue under the state's version of the facts, on which the jury must have relied in finding the defendant guilty. The request might

properly have been denied, however, for the reason that under the crime charged it was not essential to decide whether the defendant had a right to use force to resist an illegal entry.

The defendant excepted to the charge not only for failure to grant her request but also on the ground that the instructions as given created the impression that there was no right to resist an unlawful intrusion by the police. In the charge the court did not expressly indicate whether the defendant may have had a right to resist an illegal entry, but did read to the jury General Statutes § 53a-23 which states that: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal." Previously the court had discussed the legality of the arrest of the suspect in relation to whether the officers were in the performance of their duties. No attempt was made, however, to explain the relationship of § 53a-23 to that issue. The omission of such an explanation after reading the statute only served to give the jury the impression that the legality of the entry by the police was of no significance, because the defendant had no right to resist whether it was lawful or unlawful.

The defendant was charged with the offense of "interfering with an officer . . . in the performance of his duties." General Statutes § 53a-167a. As the trial court seems to have recognized at an earlier point in the charge, an officer cannot be found to have been in the performance of his duties unless he was acting within the law at the time of the alleged interference. *State* v. *Cesero,* 146 Conn. 375, 379. If the entry by the officers into the apartment of the defendant was illegal, they were not performing their duties and the defendant could not have been found guilty as charged, whether or not § 53a-23 were applicable.

Proof that the officers entered the home of the defendant legally was an essential element of the state's case, because it was that duty which they claimed to be performing at the time the defendant may have interfered with them. The jury should have been told unequivocally to acquit the defendant if the entry was found to have been unlawful for the reason that any interference under those circumstances would not have occurred while the officers were in the performance of their duties. Accordingly, it was unnecessary and inappropriate to refer to the restriction of the common-law right to resist an unlawful arrest effectuated by § 53a-23. Even without the statute, any such right would arise only after it had first been determined that the entry or arrest was illegal, a result which would necessitate an acquittal in any event. We need not, therefore, consider whether § 53a-23 is intended to create an exception for police officers to the right of an occupant of a dwelling to defend his premises against unlawful entry under General Statutes § 53a-20[7] or at common law.

We conclude, therefore, that there was error in reading § 53a-23 to the jury without a proper explanation of its relationship to the issues in the case. *State* v. *Criscuolo,* 159 Conn. 175, 177; *Murphy* v. *Way,* 107 Conn. 633, 640. The over-all effect of this portion of the charge was to confuse the jury upon a central issue in the case.

---

[7] General Statutes § 53a-20 provides, in pertinent part, that: "A person in possession or control of premises . . . is justified in using reasonable physical force upon another person when and to the extent that he reasonably believes it is necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person . . . or (3) to the extent that he reasonably believes it necessary to prevent or terminate an unlawful entry by force into his dwelling . . . and for the sole purpose of such prevention or termination."

## V

The remaining claim of error, that the court improperly charged the jury upon the subject of the unfavorable inference to be drawn from the failure of the state to produce the complainant as a witness requires only brief discussion. The defendant was not entitled to the instruction because, as the party claiming the benefit of the inference, she had the burden of proving the availability of the witness. *Raia* v. *Topehius,* 165 Conn. 231, 237. The only evidence as to availability was some testimony that two attempts to serve a subpoena upon the complainant had been unsuccessful. There was no basis for granting the requested charge. *Raia* v. *Topehius,* supra.

There is error, the judgment is vacated and the case is remanded for a new trial.

In this opinion PARSKEY and SPONZO, Js., concurred.