[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, People's Bank (People's), has filed a three count amended complaint seeking to collect on a note executed by the defendant, ARM Enterprises, Inc., and guarantees executed by the defendants, ARM Properties, Inc., Archie R. McCardell and Margaret M. McCardell. The defendants have filed their answer, special defenses and a nine count counterclaim. In their counterclaim, the defendants allege that People's is liable for breach of contract, breach of the implied duty of good faith and fair dealing, breach of implied contract, breach of contract, breach of the implied duty of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act (CUTPA), unjust enrichment, tortious interference with contractual relationships, and tortious interference with business expectancies. In another, consolidated action, ARM Industries, Ltd., ARM Development, Ltd., ARM Projects, Ltd., and ARM Equities, Inc. (ARM), as plaintiffs, have filed an eleven count revised complaint against People's Bank, in which ARM alleges the same claims as are contained in its counterclaim in the consolidated action with the addition of claims of negligent and fraudulent misrepresentation, and slander of title in the tenth and eleventh counts.[1]
CT Page 6018
ARM makes the following allegations in its complaint and counterclaim. Based on oral representations of People's and the language of the loan documents, ARM Enterprises, Inc. entered into an agreement for a revolving line of credit on April 17, 1987, secured by the value of lots at a real estate development known as "The Ridge" and the adjoining estate of the McCardells. This agreement provided for yearly renewal based upon review of updated financial statements. At that time, People's was aware that the proceeds of the loan would be used by the other ARM entities to diversify into other geographical areas and investment opportunities. Because of the deteriorating real estate market in Fairfield County in 1987 and 1988, and not based on ARM's financial statements, People's determined that it would not renew the revolving line of credit, unless the loan was substantially rewritten to include, among other things, mortgages on all property owned by ARM and the McCardells. Arm, faced with extensive financial losses unless it complied, acceded to People's demands and executed new loan documents on November 16, 1988.
People's has moved for summary judgment on counts one, two, three, five, and eight through eleven[2] of the complaint filed by ARM, and on counts two, six, eight and nine of the counterclaim filed by ARM Enterprises, Inc., ARM Properties, Inc. and the McCardells.
 I
"`Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barrett v. Danbury Hospital,232 Conn. 242, 250, 654 A.2d 748 (1995). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. Connecticut Bank Trust Co. v.Carriage Lane Associates, 219 Conn. 772, 781, 595 A.2d 334
(1991); see Practice Book §§ 380 and 381. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. (Citations omitted; internal quotation marks omitted.) Connecticut Bank Trust Co. v. Carriage LaneCT Page 6019Associates, supra, 781." Haesche v. Kissner, 229 Conn. 213, 217,640 A.2d 89 (1994). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment].' (Internal quotation marks omitted.) Burnsv. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257 (1984)."Water and Way Properties v. Colt's Manufacturing Co., 230 Conn. 660,665, 646 A.2d 143 (1994).
People's first argues that the second count of ARM's complaint and counterclaim, alleging a breach of the duty of good faith and fair dealing, is barred by the applicable three year statute of limitations, General Statutes § 52-577.[3] ARM contends that the alleged breach of the covenant of good faith and fair dealing is governed by the six year statute of limitations contained in General Statutes § 52-576 (a).[4]
People's cites two federal cases, West Haven v. CommercialUnion Ins. Co., 894 F.2d 540, 546 (2d Cir. 1990), and Kent v.Avco Corp., 849 F. Sup. 833, 835 (D. Conn. 1994), which hold that a breach of the implied covenant of good faith and fair dealing is governed by the three year statute of limitations for torts. However, in International Inns, Inc. v. OJA, Superior Court, judicial district of New London at Norwich, No. 104344 (1994), the only Connecticut case to analyze this issue, the court(Leuba, J.) determined that although liability has been imposed in tort for breach of the implied covenant of good faith and fair dealing, such a cause of action generally arises out of contract and is therefore governed by the statute of limitations set out in General Statutes § 52-576 (a).
Determining whether the statute of limitations for a breach of the implied duty of good faith and fair dealing is governed by § 52-576 (a) or § 52-577 "in this context is a question of legislative intent. We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. State v.Kozlowski, 199 Conn. 667, 673, 509 A.2d 20 (1986); Hayes v.Smith, 194 Conn. 52, 57, 480 A.2d 425 (1984). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to CT Page 6020 implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) In re Bruce R., 234 Conn. 194,205-206, 662 A.2d 107 (1995).
General Statutes § 52-576 provides that, except in certain circumstances not relevant here, "[n]o action . . . on any contract in writing, shall be brought but within six years after the right of action accrues. . . ." The question here is whether an action for breach of the implied covenant of good faith and fair dealing is an action on a contract or is an action in tort, governed by General Statutes § 52-577. Beyond the bare text of this aged statute there is no legislative history or circumstances surrounding its enactment nor a legislative policy which illuminates the statute within the present context. There are, however, "common law principles governing the same general subject matter." In re Bruce, supra, 234 Conn. 206.
The Connecticut Supreme Court has repeated stated "`[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.'Habetz v. Condon, 224 Conn. 231, 238, 618 A.2d 501 (1992); see also Warner v. Konover, 210 Conn. 150, 154-56, 533 A.2d 1138
(1989)." Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185,200, 663 A.2d 1001 (1995). "The concept of good faith and fair dealing is [e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." (Internal quotations marks omitted.) Verrastro v. Middlesex Insurance Co., 207 Conn. 179,190, 540 A.2d 693 (1988). "An `implied covenant of good faith and fair dealing has been applied by [the Supreme Court] in a variety of contractual relationships, including . . . insurance contracts; Hoyt v. Factory Mutual Liberty Ins. Co., 120 Conn. 156,159, 179 A. 842 (1935); Bartlett v. Travelers Ins. Co.,117 Conn. 147, 155, 167 A. 180 (1933); cf. Grand Sheet Metal ProductsCo. v. Protection Mutual Ins. Co., 34 Conn. Sup. 46, 375 A.2d 428
(1977) . . . .' Magnan v. Anaconda Industries, Inc., supra; see also 2 Restatement (Second), Contracts § 205 (1979); 43 Am.Jur.2d, Insurance, §§ 141, 142; 3 G. Couch, Insurance 2d (Rhodes Rev. 1984) 25.32." Buckman v. People Express, Inc.,205 Conn. 166, 170-71, 530 A.2d 596 (1987). However, in Eis v. Meyer,
CT Page 6021213 Conn. 29, 566 A.2d 422 (1989), the court declined to imply a covenant of good faith and fair dealing into an easement because, inter alia, it could not" find the necessary contractualcomponent in the grant of easement . . . . (Emphasis added.) Id., 36.
These cases make clear that in Connecticut an implied covenant of good faith and fair dealing is based in contract and limited by the express terms of the contract. This court hold that an action for breach of an implied covenant of good faith and fair dealing is an action on a contract and not an action in tort. See also F. Mannino, Lender Liability and Banking Litigation § 5.03[1] (1995); J. Norton, Lender Liability Law and Litigation § 3.04[6] (1994).[5] People's motion for summary judgment on the second count of ARM's complaint and counterclaim is denied.
 II
People's next maintains that as to counts one, two and three of ARM's complaint alleging breach of contract, breach of the covenant of good faith and fair dealing, and breach of implied contract, ARM Development, Ltd., ARM Industries, Ltd., ARM Projects, Ltd., and ARM Equities, Inc. do not have standing because they were not parties or intended beneficiaries of the 1987 loan. Arm contends that the court (Thim, J.) on a motion to dismiss already has determined this issue in its favor.
Earlier in these proceedings People's moved to dismiss counts one, two, and three of the complaint on the ground of lack of standing. The court (Thim, J.) denied that motion noting that "[i]n the first three counts, the plaintiffs allege that they have suffered financial losses by reason of the bank's conduct with respect to a loan transaction. The court has examined the pleadings and documents submitted by the parties. Based upon this review, the court concludes the plaintiffs have demonstrated a colorable claim of injury."
"The law of the case . . . expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. Messenger v. Anderson, 225 U.S. 436,444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was CT Page 6022 correctly decided, in the absence of some new or overriding circumstance. State v. Hoffler, 174 Conn. 452, 462-63,389 A.2d 1257 (1978); State v. Mariano, 152 Conn. 85, 91-92, 203 A.2d 305
(1964), cert. denied, 380 U.S. 943, 85 S.Ct. 1025, 13 L.Ed.2d 962
(1965). . . . Breen v. Phelps, supra, 99." Suffield Bank v.Berman, 228 Conn. 766, 774, 639 A.2d 1033 (1994). "`"The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. See Wright, Miller 
Cooper, Federal Practice and Procedure: Jurisdiction § 4478."' Rosenblit v. Danaher, 206 Conn. 125, 132, 537 A.2d 145
(1988). Our Supreme Court has recognized that `the law of the case doctrine is not one of unbending rigor. . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he himself made the original decision. Santoro v. Kleinberger, 115 Conn. 631,638, 163 A. 107 (1932).' Rosenblit v. Danaher, supra, 132-33; see also State v. Mariano, 152 Conn. 85, 91, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S.Ct. 1025, 13 L.Ed.2d 962 (1964). `In essence [the law of the case] expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. Messenger v. Anderson, 225 U.S. 436,444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). . . .' S.M.S.Textile Mils Inc. v. Brown, Jacobson, Tillinghast, Lahan King,P.C., 32 Conn. App. 786, 798, 631 A.2d 340, cert. denied,228 Conn. 903, 634 A.2d 296 (1993)." Stevens v. Hartford Accident Indemnity Co., 39 Conn. App. 429, 437-38, 664 A.2d 826 (1995).
However, because the test to which the court must adhere in determining a motion to dismiss differs from the test for granting a motion for summary judgment, this court has examined the issue de novo.
Despite criticism by noted commentators; see Rapaport Benedict, P.C. v. Stamford, 39 Conn. App. 492, 498 n. 6 (1995); the prevailing test in Connecticut for determining whether a person has a right of action as a third party beneficiary of a contract is whether the parties to the contract intended to create a direct obligation from the promisor to the third party beneficiary. Gateway Co. v. DiNoia, 232 Conn. 223, 231,654 A.2d 342 (1995). "Contractual intent is a question of fact."Connecticut National Bank v. N.E. Owen II, 22 Conn. App. 468,474, 578 A.2d 655 (1990). As such, summary judgment is ordinarily, though not invariably, inappropriate where intent is CT Page 6023 implicated. Reynolds v. Chrysler First Comm. Corp., 40 Conn. App. 725,731-32, 673 A.2d 573 (1996).
The evidence presented by the parties shows that the revolving line of credit was established for the purpose of investing in out of state ventures, and that those ventures are ARM Development, Ltd., ARM Industries, Ltd., ARM Projects, Ltd., and ARM Equities, Inc. On the present record, the court cannot determine as a matter of law whether the contracting parties intended that ARM Development, Ltd., ARM Industries, Ltd., ARM Projects, Ltd., and ARM Equities, Inc. be third party beneficiaries of the revolving line of credit. See Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994);Picataggio v. Romeo, 36 Conn. App. 791, 794, 654 A.2d 382 (1995);Remington v. Aetna Casualty Surety Co., supra, 35 Conn. App. 586. For this reason, People's motion for summary judgment on counts one, two and three of ARM's complaint is denied.
 III
The balance of People's motion for summary judgment is denied. Not without some regret, and in the context of the crush of other business, the court "note[s] that summary judgment is not well suited to the disposal of complex cases . . . and that this case presents an extraordinarily technical and multifarious factual labyrinth." Miler v. United Technologies Corp., 233 Conn. 732,752, 660 A.2d 810 (1995).
People's motion for summary judgment as to ARM's complaint is denied as to counts one, two, three, five, eight, nine and ten, and granted as to count eleven. Furthermore, People's motion for summary judgment as to ARM's counterclaim is denied in its entirety.